Joseph SCADUTO, Plaintiff-Appellee,

v.

Anthony J. ORLANDO, d/b/a A. J. Orlando Contracting Co., Defendant-Appellant.

No. 453, Docket 30796.

United States Court of Appeals
Second Circuit.

Argued June 5, 1967.

Decided July 28, 1967.

Leo H. Raines, New York City (Lawrence C. Gutman, Raines & Gutman, New York City, on the brief), for plaintiff-appellee.

Simon H. Rifkind, New York City (Allan Blumstein, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, George H. Foley, S. Donald Gonson, Hale & Dorr, Boston, Mass., on the brief), for defendant-appellant.

Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The circumstances out of which this controversy arose are set out in the opinion of this court in the first appeal and will not be repeated here. 340 F.2d 293 (2 Cir.), cert. denied 380 U.S. 978, 85 S. Ct. 1341, 14 L.Ed.2d 272 (1965). Two of the issues raised on the first appeal were disposed of in our prior decision and are not before us on this second appeal. We held that Scaduto [1] had no duty to construct embankments; we also held that Orlando had no right to retain $75,000 to pay Scaduto's creditors or to indemnify himself against claims made by Scaduto's creditors directly against him, Orlando, as prime contractor. Orlando had also retained $34,000 out of the estimated amount due Scaduto in April, 1956, for failure to take rock to embankment sites. This was a separate issue which was resolved at the second trial, and it was conceded by the appellant, Orlando, in his argument on the second appeal that the disposition of rock other than by delivery to embankment sites was made with the consent and under the direction of Orlando's engineer.

The main reason for remanding the case after the first appeal was the trial court's erroneous conclusion that the reference in Section 1 of the subcontract to the plans and specifications of the prime contract had no bearing on the case and need not be considered. We held that, while those plans and specifications could not be construed to increase the kind of work agreed to be performed under the subcontract, they did define some of its terms and governed the way in which the work was to be done, and that Sections A2.12 and A2.32 of the specifications of the prime contract became a part of the subcontract for these purposes. We said that the clause of the subcontract which incorporated these specifications was clear and unambiguous. Unfortunately clarity in the re-

1. The plaintiff-appellee, Joseph Scaduto, is, by assignment, successor in interest to the subcontractor, Scaduto Bros. Trucking, Inc., now bankrupt. In the interest of simplicity, both will be referred to throughout this opinion as "Scaduto," as if there had been only one party throughout the controversy.

spective legal interests of the parties began and ended at that point.

■ The principal remaining issue, mentioned on the first appeal and again before us on the present appeal is whether or not the agreement between the parties, and the understanding for the so-called continuance of the agreement, required Scaduto to excavate and remove all of the Class A rock remaining in the 4.89 mile section of the Turnpike, or from the portion of the section on which he worked, at the agreed rate of $1.50 per cubic yard in such a manner as to comply with the design and profile of the excavated roadbed as shown by the plans and specifications and, if so whether Orlando had waived adherence by Scaduto to that standard and degree of performance. It must then be determined whether or not Scaduto performed his contractual obligations. We held on the first appeal that any doubt as to the scope of the work to be performed by Scaduto must be resolved against Orlando, 340 F.2d at 298–299. However, once the scope of the work is determined the burden of showing performance necessarily rests upon Scaduto.

The subcontract called for the excavation and removal of approximately 350,-000 cubic yards of rock and provided that the work be started by August 1, 1955 and be completed by December 31, 1955. It appears that this subcontract was performed within the time prescribed and with sufficient compliance with its terms so that Scaduto was paid, exclusive of the 10% agreed retainage, for the estimated rock excavated and removed, except that Orlando has claimed, during the course of the litigation, that Scaduto breached the contract by not removing the rock to the grade and contour of the roadbed as prescribed by Section A2.32 of the specifications of the prime contract. The appellee, however, in effect claims that Section 11 of the subcontract required him, Scaduto, to do his work "in accordance with general directions given by the contractor [Orlando] as to the portions of the work which shall have priority" and that he,

Scaduto, fully complied with all the directions given him by Orlando's engineer and excavated and removed rock where the engineer told him to.

At the end of December, 1955, there still remained large quantities of rock to be removed from Orlando's 4.89 mile section of the Turnpike and Orlando and Scaduto agreed to continue the subcontract beyond the termination date. Scaduto went forward with the excavation and removal of rock and the engineers, each month, made estimates of the quantities taken out and Scaduto was paid through the March, 1956 estimate, but Orlando withheld payment of the amounts estimated by the engineers to be due in April, May and June. On June 5, 1956 Scaduto removed all of his equipment and ceased any further work on the Turnpike.

■ The basic issue which we hold to require a second remand is presented by Orlando's principal contention on this appeal, that, from the time Scaduto commenced work in late July, 1955, to the time he discontinued the work on June 5, 1956 he was under a duty to comply with the specifications in Section A2.32 of the prime contract, incorporated by reference into the subcontract through Section 1 of that agreement, and that therefore Scaduto was obligated to excavate rock and remove other material in such a way that the resulting roadbed would reflect the Authority's plans in all respects, that is, it would be at the grade called for, the slopes would be cut back and the profile of the roadbed would conform to that depicted by the plans.

The appellee, Scaduto, asserts that it was never intended by the parties that he as subcontractor had a duty to remove the rock to align the cut and roadbed with the contours of the plans and specifications. He further, in effect, argues that, even if the specifications were incorporated by reference into the subcontract, Orlando waived the provisions by giving him day by day instructions, under Section No. 11 of the subcontract, as to what rock to remove from what particular places. The determination of this

issue depends upon detailed and specific findings (which have never been made) as to the relative rights and duties of the parties under the subcontract, and facts which show whether any of its terms were modified or amended, whether the rights of a party were waived, whether a party breached a duty and like matters. Facts must be found as to the method of excavation and removal of rock under the initial subcontract between late July and December 31, 1955, whether Scaduto, who was not the exclusive subcontractor for removing rock, was assigned a particular portion of the 4.89 mile section, for which he had full responsibility in carrying out the subcontract for rock removal, or was assigned from day to day or every few days to various parts of the 4.89 mile section of the Turnpike, from other portions of which rock was being removed or had been removed by Orlando's men or other subcontractors, to take out particular areas and quantities of rock as directed by Orlando's engineer. In dealing with the matter of the completion of the initial subcontract the trial court should consider evidence of whether or not, on or about December 31, 1955, claims were made by Orlando that Scaduto had failed to comply·with the specifications, whether Orlando's and the Turnpike's engineers approved or disapproved Scaduto's work, whether any conditions were placed by them on the estimates for the payments to Scaduto for the work done and whether Orlando after December 31, 1955 made any claim for indemnity under Section No. 12 of the subcontract for work not fully performed during the period from July to December 31, 1955.

■ With regard to the agreement between the parties for the continuance of the subcontract after December 31, 1955 there are no findings which disclose whether or not it was oral or written, what its terms were, the time within which it was to be performed, and particularly whether or not it called for the excavation and removal of a specific quantity of rock or all the remaining rock that had to be removed from the 4.89 miles of Orlando's contract and in strict compliance with specifications in Section A2.32 of the prime contract, or only an agreed portion of the 4.89 miles, or only rock in such quantities and from such locations in the 4.89 mile section as Orlando from time to time ordered, as well as other important provisions. The latest judgment of the trial court rests upon certain stated conclusions which stand unsupported by appropriate findings of fact.

For the most part the portion of the decision entitled "findings of fact" is only slightly different from the "conclusions of law." Nowhere is there a finding of the basic facts of the case. On remand the District Court must afford the parties an opportunity to offer such additional evidence as they may have on the questions to be decided, and the court must make detailed factual findings on the issues herein discussed.[2]

2. The District Court's opinion included no discussion of any counterclaim or set-off for "cost of completion" except the conclusion that "the defendant's counterclaim must be dismissed." In his brief on the first appeal, Orlando requested us to rule that Scaduto "was bound by the terms of its subcontract with the defendant to complete its rock work in accordance with the Plans and Specifications of the Prime Contract * * *" and sought to have his "cost of completion" set off. The claim, however, was never pressed on oral argument, and, due to the lack of specific findings on the issue below, we had no basis on which to resolve it. In remanding, we said,

"On rehearing the trial court will have the problem of giving effect to the plans and specifications of the prime contract as incorporated by reference into the subcontract and will hear evidence of what the parties did with regard to their relative rights and duties under the subcontract with the pertinent plans and specifications included. Whether either of the parties defaulted under the contract, or caused the default of the other, or waived any rights under it, *as well as the question raised by the appellant relative to his cross-complaint*, must be left for determination by the trial court". [Emphasis added.] 340 F.2d at 300.

Each party accuses the other of breaching the contract. The reasons originally given by Orlando for withholding from Scaduto the last three payments for estimated rock removal, i. e. Scaduto's failure to build embankments, Orlando's exposure to direct claims by Scaduto's creditors and the failure of Scaduto to take the removed rock to embankment sites, have been found untenable and have been resolved against Orlando. He now asserts, however, that Scaduto breached the contract prior to Orlando's withholding of the April, May and June payments and therefore furnished justification for the refusal to pay. He states that Scaduto breached in three ways: he did not perform the work fully and properly and in accordance with the specifications; he did not use adequate equipment for the proper performance of the work; and he did not pay what he owed to materialmen and suppliers. Neither of the last two charges would, even if true, have warranted a withholding of the payments due by Orlando for work already performed. It may be noted that the subcontract itself contained provisions relating to such eventualities.[3] Scaduto, on the other hand, claims that he fully and properly performed all of his duties under the agreement with Orlando and explicitly followed all of his directions, that any difficulties with procurement of equipment and payments to materialmen and suppliers were caused entirely by Orlando's withholding of money due him.

There remains, therefore, Orlando's charge that he was justified in withholding the payments because Scaduto did not comply with the plans and specifications and Scaduto's assertions that he did all he was required to do. We have already determined that that language of the subcontract, as originally drawn, clearly incorporated specifications A2.12 and A2.32 of the prime contract. The trial court has made no findings as to what was meant by the parties' agreement, about December 31, 1955, to continue the subcontract or what its terms were. It certainly could not have meant the same time period for performance or the same estimated quantity of rock to be removed. As stated above, the burden of establishing the scope of the work to be performed under the terms of the subcontract and the agreement for its continuance rests upon Orlando, but Scaduto has the burden of showing that he performed the work required of him; and, if he claims that Orlando waived any rights which Orlando had under the agreements or that any of the terms were changed by the conduct of the parties, Scaduto has the burden of proving those assertions.

The factual issues implicit in these conflicting claims should, to a substantial degree, be resolved by the findings above directed concerning the provisions of the agreements made by the parties, the relative rights and duties of each and whether each had performed the duties he had assumed. To the extent that they do not, the District Court will hear additional evidence and make additional findings.

If it is found that Orlando's only cause to complain that Scaduto failed to perform his work fully and properly stems from the claim that, when the April payment was due, Scaduto had not

3. Section 6 of the subcontract provides:
"The subcontractor agrees to furnish adequate labor, material and equipment to execute this work in a prompt and efficient manner. Should the subcontractor, in the opinion of the contractor, fail at any time to have adequate labor, materials and equipment necessary to execute the work in a prompt and efficient manner, or should fail to carry out the order of the Massachusetts Turnpike Authority and/or the contractor for doing such work, or fail in any respect to prosecute the work with the promptness or diligence, or fail in the performance of the agreements herein contained, the contractor shall be at liberty to provide such labor, materials and equipment as it may deem proper, and to deduct the cost thereof from any money then due or thereafter to become due the subcontractor under this agreement."

excavated in such a way as to bring the profile of the roadbed into conformity with the cross-section shown in the plans, the trial court must still consider whether or not Scaduto could still have completed performance sufficiently to fufill his whole obligation under the agreement but was prevented from doing so by Orlando's withholding of the payment. Orlando contends that Scaduto's mode of operation was such that even if permitted to finish, he would not have completed the roadbed in conformity with the plans. He points to the testimony in the record, much of it by Scaduto's employees, which tends to demonstrate that Scaduto was blasting and excavating rock in the center of the roadbed but failing to excavate fully the sides and to cut back the slopes to conform with the plans. The former work, described as the "gravy," could be done quickly and profitably, while the latter was more expensive to accomplish and, if done separately from the easier work, was less profitable to the contractor because of a low yield of rocks in relation to the cost of getting them out. There was some evidence that Scaduto had followed that course despite warnings that his costs would thereby be increased. But even assuming that Orlando's assertions are found to be true and that Scaduto had a duty under the agreement to conform the cross-section of the roadbed to the profile in the plans, Scaduto cannot have breached the contract, at the time Orlando first withheld the payments due, unless he had by that time refused to do the work or had voluntarily placed himself in a position that rendered it impossible for him to perform his contractual duties. See Restatement, Contracts § 318(c) (1932). Even if Scaduto's mode of operation was improper, Orlando, whose agents were in constant supervision of the project, appears largely to have acquiesced in it from the beginning of the work in July, 1955, to April, 1956, and took no steps to change it. Under such circumstances. Orlando may be held to have waived any fault in Scaduto's manner of operation. See United States for Use of Susi Contracting Co. v. Zara Contracting Co., 146 F.2d 606, 608 (2 Cir. 1944). This would not release Scaduto from a duty ultimately to excavate and remove the remaining more expensive rock, but it would prevent Orlando from terminating, so long as there was a reasonable possibility that Scaduto would fully perform. All of this calls for explicit findings by the trier.

This present action brought by Scaduto is not a suit for profits lost because of a breach by Orlando, but is one for money earned and due for rock excavated and removed between March 15, 1956 and June 5, 1956, when Scaduto stopped working.[4] In its answer and counter-claim Orlando claims a set-off for his cost of completing the work throughout the portion of the section from which Scaduto had removed the middle rock but which he had failed to conform to grade and profile. Orlando argues that at most this would leave a remainder due by him to Scaduto of only $9,782.24. But in addition Orlando counter-claimed on Scaduto's performance bond for $20,939.31 for legal fees and expenses incurred in defending himself against Scaduto's creditors, as a result of which he declares that Scaduto owes him the net sum of $11,157.07.[5]

4. The pre-trial order describes the action as one for work, labor and services. In his brief on the first appeal, Scaduto, appellee, said:

"* * * in the complaint, appellee seeks to recover damages for work actually performed pursuant to a contract between the parties, for which appellant failed to pay * * * Orlando demanded that Scaduto perform work outside the scope of the contract which Scaduto did not perform by reason of Orlando's default in payment."

5. In his answer to Scaduto's complaint, Orlando counter-claimed because he was "compelled to and did complete the work required [of Scaduto] to the defendants (sic) in the amount of $70,000 * * *" Subsequently, Orlando amended his answer to increase the amount sought to $228,716.75, which he described as the "cost necessarily and reasonably incurred" in completion. Close scrutiny of Orlando's figures reveals, however, that even if he were permitted to set off his cost of completion, the sum claimed would enable

Orlando, assuming that Scaduto was under an obligation to complete the rock removal in conformity with the plans and specifications and that Scaduto was the one who breached the contract, contends that he, Orlando, had the right to deduct from the amount claimed by Scaduto, Orlando's own cost of completing the contract. He bases his claim on a rule of damages applied by Massachusetts [6] in cases in which a breach of contract by a promisor, such as himself, prevents a promisee, such as Scaduto, from completing performance; and that is, that the plaintiff-promisee is entitled to "the contract price less the reasonable cost of completing the work by the defendant." Millen v. Gulesian, 229 Mass. 27, 118 N.E. 267 (1918). See also Magnolia Metal Co. v. Gale, 189 Mass. 124, 75 N.E. 219 (1905); Patterson, Builder's Measure of Recovery for Breach of Contract, 31 Colum.L.Rev. 1286, 1289 (1931); McCormick, Damages § 164 (1935). Under this view, the "contract price" would be equal to the total cubic yardage of rocks which had to be excavated to complete performance multiplied by the contract rate applicable to each class of rock.

Scaduto, however, is not suing to recover the whole contract price for all of the rock agreed to be removed from the parts of the 4.89 mile section of Turnpike on which he worked as if he had fully performed in strict compliance with the plans and specifications, or for profits lost, but for the cubic yards of rock excavated and removed at the contract rate. Orlando contends that Scaduto breached the contract, but the present state of the record does not include sufficiently precise findings to support the conclusion that there was a breach by one party or the other or by both or neither. On remand, however, if it should appear from evidence already in the record together with the further evidence that may be adduced that Orlando had not waived his right to insist upon ultimate completion and that Scaduto repudiated the contract by refusing to complete, then Orlando could set off against any sum remaining due and unpaid by him to Scaduto for work performed, any excess of the cost which Orlando had to expend for completion of the contract by others, over what he would have had to pay Scaduto to complete it, had Scaduto fully performed. See Restatement, Contracts § 329; 5 Corbin, Contracts § 992 (1964). If, on the other hand, the District Court finds that Scaduto had no duty to conform the cut for the roadbed to contour and profile and that Orlando breached the contract by improperly withholding money due Scaduto or otherwise, then Scaduto is entitled to a judgment for the sums due with interest and costs, and Orlando can have no set-off or recovery under his cross-complaint. See United States for Use of Susi Contracting Co. v. Zara Contracting Co., supra. If

him unjustly to retain money otherwise due Scaduto for work done. Thus Orlando claims that he was damaged in the amount of $215,173.38 as a result of Scaduto's failure to complete, broken down as follows:

"Direct labor, materials and equipment costs to Orlando of completing Scaduto Bros. work, before overhead and profit ..................$184,539.77
10% overhead .......... 18,453.98
6% profit ............. 12,179.63."

But if Scaduto had completed performance, Orlando would have been obligated to pay Scaduto for the amount of rock excavated at the contract rate. Thus, assuming that Scaduto was the only party in breach, the most Orlando could have been damaged was the cost of completion, claimed to be $215,173.38, less the amount of rock excavated in completion multiplied by the contract rate.

6. Under Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941), the state whose law applies is dependent upon the conflict of laws rule of the state of suit, which is New York; and New York would apply the law of the place "which has the most significant contacts with the matter in dispute" and thereby give the place "having the most interest in the problem paramount control over the legal issues arising * * *" Auten v. Auten, 308 N. Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954). That place is Massachusetts. Royce Chemical Co. v. Sharples Corp., 285 F.2d 183 (2 Cir. 1960).

the facts found are that at the time Orlando committed a breach in improperly withholding the payments due, Scaduto, although not following the most efficient procedure in making the excavations, had neither repudiated his obligation to complete in strict compliance nor had made such performance impossible, then under such circumstances Massachusetts law affords a contractor with claims like Scaduto's alternative means of recovery: he can either sue for damages under the contract [7] or he can "rescind" the contract and sue in quantum meruit for the value of his services, which is measured, not by the contract rate, but by the actual value of labor and materials. See, e. g., Beaudoin v. Lenza, 338 Mass. 798, 156 N.E.2d 682 (1959); Posner v. Seder, 184 Mass. 331, 68 N.E. 335 (1903); Connolly v. Sullivan, 173 Mass. 1, 53 N.E. 143 (1899); Fitzgerald v. Allen, 128 Mass. 232 (1880). The Massachusetts rule is in accord with the general rule, see e. g., United States for Use of Susi Contracting Co. v. Zara Contracting Co., supra; United States for Use and Benefit of Harkol, Inc. v. Americo Construction Co., 168 F.Supp. 760 (D.Mass.1958); Clark v. Mayor, etc., of City of New York, 4 N.Y. 338 (1850); City of Philadelphia v. Tripple, 230 Pa. 480, 79 A. 703 (1911); 5 Corbin, Contracts § 1109 (1964); 5 Williston, Contracts § 1459 (rev. ed. 1937); Restatement, Contracts § 347 (1932); and the impact of the rule is to permit the promisee to "rescind" even a contract upon which he would have lost money and base his recovery on the value of the services which he gave to the defendant irrespective of whether he would have been entitled to recovery in a suit on the contract. See, e. g., City of Philadelphia v. Tripple, supra; Patterson, Builder's Measure of Recovery for Breach of Contract, 31 Colum.L.Rev. 1286, 1302

(1931). Scaduto, however has thus far proceeded on the theory that he was under no obligation to conform the roadbed and cut to the grade and profile of the specifications and has sought recovery for the amount of rock excavated at the contract rate. If on remand Scaduto decides to adopt the theory which affords him an election, he should make it, at least in the alternative, a reasonable time before the trial, preferably at a pre-trial and present evidence of value which is not now in the record.

■■■■■ If then the court finds that up to the time Orlando withheld the payments, there had been no breach by Scaduto who had not completed performance, it must then determine what the value of all of Scaduto's services, i. e. labor and materials, was from the time he started work until he left the site on June 5, 1956 and subtract from that amount all moneys paid by Orlando under the contract. Posner v. Seder, supra; Connolly v. Sullivan, supra; Restatement, Contracts §§ 347, comment c and 349(2) (c) (1932); 5 Corbin, Contracts § 1114 and especially p. 616 (1964); 5 Williston, Contracts § 1460 A (rev. ed. 1937). The standard for measuring the value of Scaduto's services, of course, is the amount for which the services and materials supplied could have been purchased from one in Scaduto's position at the time and place the services were rendered. See, e. g., United States for Use of Susi Contracting Co. v. Zara Contracting Co., supra, 146 F.2d at 611; Wunderlich Contracting Co. v. United States ex rel. Reischel & Cottrell, 240 F.2d 201, 205 (10 Cir.) cert. denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957); 5 Corbin, Contracts, § 1112, at 599–600 (1964). Although the contract rate may be considered in receiving evidence of value, it neither measures value [8] nor limits the

7. If he so elects, Scaduto may sue for the contract price, in which case, under the rule of Millen v. Gulesian, Orlando can deduct the reasonable cost of completion and, if it exceeds the contract price, preclude any recovery by Scaduto. See Restatement, Contracts § 329, comment g and § 335 (1932).

8. In Jones and Jones v. Judd, 4 N.Y. 411 (1850), upon which appellee relies heavily, judgment was given at the contract rate despite evidence that the value of work done was less than the contract rate. Close analysis, however, reveals that Jones and Jones v. Judd was not a quantum meruit action, but a suit on the

amount which can be recovered. Connolly v. Sullivan, supra; Fitzgerald v. Allen, supra; also see, e. g., Dalton v. American Ammonia Co., 236 Mass. 105, 127 N.E. 504, (1920); Cark v. Mayor, etc., of City of New York, supra. But in weighing the matter of the contract rates on the issue of value, the court will give consideration to the evidence offered by Orlando that the rock excavation and removal still required to be done after June 5th to achieve completion of the part of the Turnpike on which Scaduto had worked was more difficult and therefore more valuable than the work which Scaduto had actually done. If it is found that the contract rate, e. g., $1.50 per cubic yard of Class A rock excavated, represented an averaging out of the value of the cheaper work which had been done and the more expensive and difficult work left to be done, support would be afforded Orlando's claim that the work done had a true value of less than the contract rate. See Patterson, supra at 1303; Restatement, Contracts § 347, illustration 3 of subsection 1a (1932); Clark v. Mayor, etc., of City of New York, supra.[9] The burden of demonstrating the value of services, of course, rests on Scaduto.

An additional point raised on this appeal relates to the District Court's denial to Orlando of certain costs incurred in the first appeal. Orlando's original bill of costs, taxed by the clerk of this court and included in our mandate pursuant to Rule 27, amounted to $5,147.50, of which $5,122.50 was for the cost of printing the appendix and $25.00 was the fee for docketing the appeal. Thereafter, the appellant filed an amended bill of

costs with the clerk of the District Court seeking costs of $8,599.33. The following additional items were sought:

trial transcript ..............$1,041.73
printing of appellate briefs ...   541.60
premium on supersedeas bond .  1,835.94
reproduction of exhibits for
    appeal .....................    54.56
notice of appeal fee ..........     5.00

A motion by appellee to reduce costs to the original amount taxed in this court was granted by the District Court, however, and Orlando was awarded only $5,-147.50 in reduction of appellee's second judgment.

■■■■  None of the items sought in the District Court, of course, were items taxable in this court, see Committee on Federal Courts of the Bar Ass'n of the City of New York, Appeals to the Second Circuit 75 (1966), so they were properly sought in the District Court. By longstanding custom in this Circuit, however, the cost of obtaining a supersedeas bond is allowed to a prevailing appellant, and the District Court should not have denied it in this case. See Berner v. British Commonwealth Pacific Airlines, Ltd., 362 F.2d 799, 801 (2 Cir. 1966); Land Oberoesterreich v. Gude, 93 F.2d 292 (2 Cir. 1937); Williams v. Sawyer Bros., Inc., 51 F.2d 1004, 81 A.L.R. 1527 (2 Cir. 1931). The same is true of the fee for filing the notice of appeal in the District Court. See Land Oberoesterreich v. Gude, supra. As to the other items, the district judge acted within his authority in denying them. According to the uncontradicted affidavit of appellee's counsel, the parties had agreed

---

contract, which had been terminated without any fault on the part of the defendant. Since there was no breach, the plaintiff lacked the power to rescind, and sue in quantum meruit and could only recover at the contract rate to the date of termination.

9. *Clark* represents the converse of the present case. There the more valuable work had been done prior to the breach of contract and the less valuable work was left to be done. The New York Court of

Appeals approved the lower court's granting judgment for work done at a rate in excess of the contract rate of $1 per cubic yard of rock excavated. Judgment was reversed, however, because the lower court, rather than making an independent determination of the value of the work done, erroneously took $1 per cubic yard to be an average of value, and found the work done to be worth three times that not done and arbitrarily determined value on that basis. 4 N.Y. at 344.

to share the costs of obtaining a trial transcript. In any event, the cost of the transcript and of reproducing the exhibits may or may not be granted by the district judge, in his discretion, see 28 U.S.C. § 1920; Berner v. British Commonwealth Pacific Airlines, Ltd., supra. It seems to us that the omission of the expense item of $54.56 for copying exhibits for use on appeal, from the bill of costs prepared and taxed by the Clerk of this court should have been taken up with this court as soon as the bill of costs was received. As the matter was left for the District Court, we shall let its disposition stand. Costs of printing appellate briefs have not, except in admiralty, customarily been granted in this Circuit, and they were properly denied. See Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 202 F.2d 731, 735, 36 A.L.R.2d 1336 (2 Cir. 1953); Kursheedt Mfg. Co. v. Naday, 108 F. 918 (2 Cir. 1901).

The judgment below is vacated and the case is remanded to the District Court to hear further evidence, to make full and complete findings of fact, conclusions of law and enter judgment.