Glen K. WINNICK, Plaintiff-Appellant,

v.

John J. MANNING, Jr., Associate Dean of Students, University of Connecticut, et al., Defendants-Appellees.

No. 271, Docket 35610.

United States Court of Appeals, Second Circuit.

Argued Feb. 14, 1972.

Decided March 9, 1972.

On Motion to Recall Mandate May 2, 1972.

9. See also Wagner v. Reading Co., 428 F.2d 289, 290 (note 2) (3d Cir. 1970); United States v. Harue Hayashi, 282 F.2d 599 (9th Cir. 1960).

**546**

James W. Sherman, Hartford, Conn. (Mark Aaronson, Los Angeles, Cal., on the brief), for plaintiff-appellant.

John G. Hill, Jr., Asst. Atty. Gen., State of Conn., Storrs, Conn. (Robert K. Killian, Atty. Gen., State of Conn., Hartford, Conn., on the brief), for defendants-appellees.

Before FEINBERG and TIMBERS, Circuit Judges, and THOMSEN, District Judge.[*]

TIMBERS, Circuit Judge:

This appeal raises important questions with respect to the scope of procedural safeguards which due process requires a public university to afford a student facing expulsion or lengthy suspension.

Glen K. Winnick, a student at the University of Connecticut, a public university, challenged his suspension from

---

[*] Of the District of Maryland, sitting by designation.

the University at the close of the 1969–70 academic year, on the ground that the University's disciplinary proceedings violated his Fourteenth Amendment right to due process.[1] Appellant sought preliminary and permanent injunctions against appellees as individuals and officers of the University of Connecticut to require them to reinstate him in good standing pending a new disciplinary hearing at which appellant would be accorded due process. After a non-jury trial, the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Chief Judge,* held that the University's disciplinary proceedings did not violate appellant's constitutional right to due process and denied appellant's request for injunctive relief.[2]

Finding no error, we affirm.

I

To place Winnick's due process claims in context, a brief recitation of the uncontroverted facts leading to his suspension is in order.

Winnick's suspension resulted from his presence at and participation in a disruption of a class of students taking a final examination on the campus on May 13, 1970.

Appellant was an enrolled member of that class, but pursuant to a resolution passed by the University Senate in the wake of the United States' invasion of Cambodia and the slayings at Kent State University, had elected not to take the examination on that date. Winnick was attending a rally outside the examination building when a group of students decided to enter and to talk to the students who were about to take the examination. The approximately sixty to eighty students who entered the examination room refused to leave at the pro-

fessor's request. Winnick maintains that he never entered the classroom, but remained outside in the hallway. He does admit, however, that he stood in the doorway and gave a speech to the students inside the classroom.

Shortly thereafter, at about 2:15 or 2:20 P.M., the Dean of Students, Robert E. Hewes, arrived, having been summoned by the professor in charge. He stated that he recognized several students, including Winnick. After appraising the situation, Dean Hewes postponed the examination.

On May 15, Dean Hewes, acting under instructions from the President of the University, conducted a series of preliminary suspension hearings with a number of students who had allegedly participated in disruptive activities on May 13. After meeting with Winnick and questioning him about his presence at and participation in the disruption of the examination, Dean Hewes temporarily suspended him from campus pending a full disciplinary hearing.

On May 28, Dean Hewes wrote to Winnick informing him that he was charged with disrupting a final examination on May 13 and that he should contact the Office of Men's Affairs to set a date for a hearing on the charge. The letter also informed Winnick that his hearing would be conducted by the Affairs Office, as the Student Conduct Committee had disbanded at the end of the academic year. Dean Hewes also provided Winnick with a copy of a Statement of Student Disciplinary Rights, which Winnick was to read and sign indicating his understanding of these rights.

On June 1, Winnick obtained from the Office of Men's Affairs copies of written statements made by Dean Hewes and

---

1. Appellant brought this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1970). The district court's jurisdiction over appellant's due process claim was conferred by 28 U.S.C. § 1343(3) (1970). See Farrell v. Joel, 437 F.2d 160, 162 (2 Cir. 1971); Esteban v. Central Missouri State College, 415 F.2d 1077, 1079

(8 Cir. 1969), cert. denied, 398 U.S. 965 (1970).

2. Peter Gacek, another student who challenged his suspension from the University of Connecticut, was co-plaintiff in the district court, but did not appeal from the district court's judgment.

by Emigdio Salmon, a student, both of which placed him at the scene of the examination disruption. Winnick was told that these statements furnished the basis for the charge against him.

The hearing was conducted on June 2 by John J. Manning, Jr., Associate Dean of Students. The written statements were again shown to Winnick and then discussed. Winnick was given a full opportunity to present his version of the events of May 13. Winnick requested the presence of Dean Hewes to challenge Hewes' statement that Winnick "was one of the active members of the leadership of that disruption." Dean Manning denied this request, maintaining that this aspect of Hewes' statement had no bearing on his decision in Winnick's case.

■ On June 5, Dean Manning wrote to Winnick informing him that, as a result of his participation in the disruption of the examination on May 13, he was suspended from the University of Connecticut until the end of the 1970 Fall Term, at which time he could apply for readmission and resume his studies on a probationary status.[3]

## II

■ Winnick has most strenuously urged on appeal that his full suspension hearing held before Dean Manning on June 2 was invalid because Dean Manning was a biased decision maker. We disagree.

■ While there remain many vexing questions as to what due process requires in school disciplinary proceedings, a fundamental requirement is that a hearing must be accorded before an impartial decision maker. Wasson v. Trowbridge, 382 F.2d 807, 813 (2 Cir. 1967). See Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1080 (1969). In the instant case, however, Winnick has failed to show that he was denied this right. Winnick makes only unsubstantiated assertions that Dean Manning was biased. He presents no evidence which shows that Dean Manning was incapable of applying stated University policies and regulations impartially. Furthermore, there is nothing in the record which indicates that Dean Manning observed, investigated or made any prehearing decisions about Winnick's conduct at the disruption of the examination. In short, Dean Manning did not have such prior official contact with Winnick's case as to give rise to a presumption of bias. See Wasson v. Trowbridge, supra, 382 F.2d at 813.

■ Absent such overt bias or prior involvement, there was no reason for Dean Manning to disqualify himself merely because of his position as a member of the Office of Men's Affairs, the office which formally initiated the suspension proceedings. Appellant seems to argue that Manning, simply by virtue of his administrative post, had a vested interest in upholding "order", and, by implication, in finding Winnick had violated University regulations. However, while all officers of the University must be concerned about the well-being of the institution, this obligation also involves major concern for the fair treatment of individuals against whom charges are brought. There is no reason to believe that Dean Manning's interest in doing justice to accused students is not every bit as strong as his interest in maintaining order. It may well be that having an administrator as the sole judge in student disciplinary proceedings is undesirable. In fact, the University's regula-

3. Because of the suspension and the district court's refusal to reinstate him, Winnick was not able to attend classes or earn credit toward graduation during the 1970 Fall Semester. He applied and was readmitted to the University for the 1971 Spring Semester. He is presently an enrolled student, but, as a result of the May 13 incident, remains on probationary status. Notations of the suspension and probation continue to mar his undergraduate record. Accordingly, even though appellant requests no monetary damages, this case is not moot. See Esteban v. Central Missouri State College, supra, 415 F.2d at 1079 n. 1; Sullivan v. Houston Independent School District, 307 F.Supp. 1328, 1338 (S.D.Tex.1969).

tions recognize that a tribunal composed of students and faculty is preferable.[4] Nevertheless, the mere fact that the decision maker in a disciplinary hearing is also an administrative officer of the University does not in itself violate the dictates of due process.

Appellant also contends that his preliminary suspension on May 15 was invalid, because Dean Hewes, the chief complaining witness, was also the judge and the jury.[5] While such commingling of functions is certainly not to be encouraged, we fail to see how it prejudiced Winnick in this case, as the crucial fact of his presence and speech at the disruption of the examination was admitted by Winnick himself. Furthermore, any procedural irregularities in the preliminary suspension hearing were cured by the full disciplinary hearing on June 2, which in effect was a trial de novo. Bistrick v. University of South Carolina, 324 F.Supp. 942, 952 (D.S.C. 1971); Zanders v. Louisiana State Board of Education, 281 F.Supp. 747, 767–68 (W.D.La.1968).

### III

Winnick further contends that Dean Manning's refusal to permit him to cross-examine Dean Hewes deprived him of his right to due process. This claim also is without merit.

The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings. Dixon v. Alabama State Board of Education, 294 F.2d 150, 159 (5 Cir.), cert. denied, 368 U.S. 930 (1961); Wright, The Con-

stitution on the Campus, *supra,* 22 Vand.L.Rev. at 1076. As we noted in Farrell v. Joel, 437 F.2d 160, 162 (2 Cir. 1971), a case involving a fifteen-day suspension of a high school student who was not accorded a hearing or the opportunity to confront adverse witnesses after an admitted "sit-in" outside the school's administrative office:

> "Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' Cafeteria and Restaurant Workers, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895 . . . (1961)."

Moreover, even assuming that the right to confront witnesses may be essential in some disciplinary hearings, there are cogent reasons why due process did not require cross-examination in this case.

First, Winnick stated that he wanted to question Dean Hewes with respect to the Dean's characterization of him as a "ringleader" of the disruption. As Dean Manning indicated, however, this aspect of Dean Hewes' statement had no bearing on the outcome of the hearing. Furthermore, since co-plaintiff Gacek was not characterized as a "ringleader" and yet received the same discipline as Winnick, it does not seem that Hewes' characterization of Winnick affected the severity of the punishment which Dean Manning imposed. Under the circumstances, no useful purpose would have been served by permitting Winnick to cross-examine Dean Hewes with respect to that one aspect of his statement.

---

4. As will be discussed *infra,* note 6, the Student Conduct Committee refused to hear Winnick's case. This Committee does act as judge and jury in a variety of student misconduct proceedings. The Committee is composed of 5 undergraduate students, 2 graduate students and 3 faculty members. See Guideline IV, Summary of Policies and Guidelines of University Committee on Student Conduct.

5. Winnick's contention that the appeal process was invalidated by Dean Hewes' par-

ticipation is without merit. While Dean Hewes was the initial reviewing authority, Winnick's request for a review of Dean Manning's decision ultimately reached the proper authorities, the Provost and the President of the University. In any event, Winnick had no constitutional right to review or appeal after the disciplinary hearing which satisfied the essential requirements of due process. Cf. Griffin v. Illinois, 351 U.S. 12, 18 (1956).

Secondly, if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing. See Wright, The Constitution on the Campus, *supra,* 22 Vand.L.Rev. at 1076. This was not a case, however, where the decision maker had to choose to believe either the accused or his accuser. Rather, as the district court points out, Dean Hewes' credibility was not at issue. The critical fact about Hewes' statement was that he witnessed appellant's presence and conduct in the vicinity of the disturbance. Since this crucial fact was admitted by Winnick himself, cross-examination would have been a fruitless exercise.

## IV

Appellant's other claims of error deserve only brief mention.

■ Winnick contends that the University's failure to follow its own procedural guidelines deprived him of his right to due process.[6] However, we are not inclined to hold that every deviation from a university's regulations constitutes a deprivation of due process. Here the alleged deviations did not rise to constitutional proportions and did not constitute in themselves a denial of due process. Furthermore, the alleged deviations were minor ones and did not affect the fundamental fairness of the hearing. Under all of the circumstances, we do not believe appellant was deprived of due process.

Winnick also argues that the University regulation he violated is void for vagueness and that he was not given notice of the actual charge against him. After reviewing the pleadings, the trial transcript and memoranda submitted by both parties in the district court, it is clear that appellant did not raise these claims below. Accordingly, we decline to consider them on appeal. See United States v. L. N. White and Co., 359 F.2d 703, 711 (2 Cir. 1966); 6 Wright & Miller, Federal Practice & Procedure 478 (1971).

■ Finally, contrary to appellant's contention, the district court did not abuse its discretion in declining to assume pendent jurisdiction over Winnick's claims, based on state administrative law, that University officials failed to follow the University's published guidelines and that his suspension was arbitrary and capricious. As noted above, the deviations from the University's procedural guidelines did not raise issues of constitutional dimensions. Moreover, the state administrative law claims which appellant raises would have required the district court to make a detailed review of University disciplinary procedures and decisions under state law. The state courts provide an adequate and more suitable forum for these claims. See Farrell v. Joel, *supra,* 437 F.2d at 163.

Affirmed.

On Motion to Recall Mandate

PER CURIAM:

On March 9, 1972, we affirmed an order of the District Court of Connecticut, M. Joseph Blumenfeld, *Chief Judge,* denying appellant's request for injunctive relief on the ground that the University of Connecticut's disciplinary procedures did not violate appellant's constitutional

---

6. Contrary to Winnick's assertions, the referral of Winnick's case to the Office of Men's Affairs, rather than to the Student Conduct Committee, did not violate University regulations. The Statement of Student Disciplinary Rights, which Winnick signed on June 2, provides that the Committee has the right to refuse to hear a case. Faced with 21 discipline cases arising out of the May 13 disturbances, the Committee had decided to hear only the cases of three graduating seniors and thus declined to hear Winnick's case. Furthermore, when the Committee disbands at the end of the academic year, as it did here, the referral of hearings to the Affairs Office during the summer months is standard practice.

right to due process. Winnick v. Manning, 460 F.2d 545 (2 Cir. 1972).

 Relying on Scaduto v. Orlando, 381 F.2d 587, 597 (2 Cir. 1967), appellant now requests us to recall the mandate and to disallow the taxing of costs against appellant for the printing of appellees' brief on appeal. We deny the motion.

The cost of printing appellate briefs ordinarily is taxed against the losing party. Fed.R.App.P. 39(a) and (c). We see no reason for not applying the general rule in this case. It is true that in Scaduto v. Orlando, *supra,* 381 F.2d at 597, we said that "[c]osts of printing appellate briefs have not, except in admiralty, customarily been granted in this Circuit, and they were properly denied." The Federal Rules of Appellate Procedure, however, became effective on July 1, 1968, after the date of that decision. Therefore, the quoted language from *Scaduto* no longer states the applicable law.

Motion denied.