37 F.3d 1500
 39 Cont.Cas.Fed. (CCH) P 76,705
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, for the Use and Benefit of KEN'S
CARPETS UNLIMITED, INC., Plaintiff-Appellant, Cross-Appellee,
v.
INTERSTATE LANDSCAPING COMPANY, INC., Defendant-Appellee,
Cross-Appellant,
and
United Fire and Casualty Company, Defendant-Appellee.
 Nos. 92-6571, 92-6631.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1994.
 
 Before: JONES, RYAN, and BATCHELDER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Ken's Carpets Unlimited, Inc. appeals the district court's order granting summary judgment for the defendant Interstate Landscaping Company, Inc. on Carpets Unlimited's action against Interstate Landscaping and its surety, United Fire and Casualty, for breach of contract and claim for recovery on a construction bond under the Miller Act, 40 U.S.C. Sec. 270(a) et seq. Interstate has filed a cross-appeal against Carpets Unlimited challenging the district court's failure to award completion costs and attorneys fees. The principal issues on appeal are (1) whether the district court erred in holding that Carpets Unlimited was required to pay its employees the prevailing wage in accordance with the Davis-Bacon Act, 40 U.S.C. Sec. 276a et seq., absent specific language in the subcontract; and (2) whether the district court erred in denying Carpets Unlimited recovery in quantum meruit. For the following reasons, we reverse and remand.
 
 I.
 
 2
 Interstate contracted with the federal government to make improvements to the military base at Fort Campbell, Kentucky, in the total amount of $5,138,000. Carpets Unlimited submitted a bid to Interstate for $18,517 to furnish and install ceramic tile, resilient flooring, and vinyl base--a portion of the Fort Campbell job. Interstate accepted the bid and later the parties entered into a subcontract ultimately worth $21,012.
 
 
 3
 Interstate's contract with the government, the prime contract, obligated Interstate to pay laborers working on the project in accordance with the Davis-Bacon Act, including the Act's prevailing wage rate requirements. The subcontract between Interstate and Carpets Unlimited provided that the subcontractor would comply with at least some of the terms of the prime contract:
 
 
 4
 The Subcontractor agrees to furnish all material and perform all work ... in accordance with this Agreement, the Agreement between the Owner and Contractor, and in accordance with the General Conditions of the Contract, Supplementary General Conditions, the Drawings and Specifications and addenda prepared by the U.S. ARMY CORP OF ENGINEERS....
 
 
 5
 ....
 
 
 6
 In addition to the foregoing provisions the parties also agree: That the Subcontract shall:
 
 
 7
 (1) Be bound to the Contractor by the terms of the Contract Documents and this Agreement, and assume toward the Contractor all the obligation and responsibilities that the Contractor, by those documents assumes toward the Owner, as applicable to this Subcontract.
 
 
 8
 The prime contract between the government and Interstate (between the "Owner" and "Contractor") required Interstate to conform to the standards of the Davis-Bacon Act. In fact, the contract reproduced exact language from the Davis-Bacon Act as a term of the contract, including the Act's prevailing wage requirement. The subcontract, however, did not include any explicit reference to the Davis-Bacon Act nor did it provide a wage scale. In the course of dealings between Interstate and Carpets Unlimited, the only direct reference to the Davis-Bacon Act came three months after the execution of the subcontract, but before Carpets Unlimited began its work, when Interstate sent an acknowledgement confirming that the subcontract was subject to the requirements of the Davis-Bacon Act. Carpets Unlimited executed the acknowledgement.
 
 
 9
 Carpets Unlimited began work in October 1989. By December, Carpets Unlimited had completed about 98% of the contract. The subcontract provided that Interstate would pay Carpets Unlimited within seven days after Interstate received payment from the government. Interstate received payment from the government on December 22, 1989. Interstate paid Carpets Unlimited on January 17, 1990. Two days later, Carpets Unlimited suspended work and announced that it was rescinding the contract because of Interstate's failure to make timely payment. Interstate completed the work at a cost of $1,472.34.
 
 
 10
 The Wage and Hour Division of the United States Department of Labor contacted Interstate to collect back wages due under the Davis-Bacon Act for employees who performed work on the project for Carpets Unlimited. Evidently, Carpets Unlimited did not pay the wages required by the Davis-Bacon Act nor did it provide Interstate with the federally mandated payroll documentation.
 
 
 11
 Carpets Unlimited sued Interstate seeking the reasonable value of the services it performed under the contract in the amount of $43,000. It claimed that the contract was invalid and unenforceable and it sought the value of its services under quantum meruit. Interstate brought a counterclaim seeking to recover the $7,825.37 it had to pay to the Department of Labor for the back wages it had to pay on behalf of Carpets Unlimited and the cost of completing work under the contract, $1,472.34.
 
 
 12
 Both parties moved for summary judgment. The district court held that Carpets Unlimited was required under the contract to meet the requirements of the Davis-Bacon Act, including the payment of Davis-Bacon wages. The district court reasoned that although the subcontract did not reference the Act, Carpets Unlimited did agree to perform its obligations under the subcontract in accordance with the conditions set out in the prime contract (the agreement between the government and Interstate), and the prime contract reproduced in full the requirements of the Act. The district court held that the subcontract "incorporated by reference" the required provisions of the Davis-Bacon Act and thus satisfied 29 C.F.R. Sec. 5.5(a)(6), which mandated that the Act's requirements must be "inserted" into any subcontract. The district court then held that Interstate was entitled to recover $7,825.37 from Carpets Unlimited, the amount Interstate paid to the government for back wages owed to Carpets Unlimited employees. Finally, the district court held that Interstate was not entitled to recover completion costs because Interstate itself breached the contract when it failed to pay Carpets Unlimited in a timely fashion. The district court also denied Interstate's request for attorney's fees. Both parties appeal.
 
 II.
 
 13
 We review a grant of summary judgment de novo and use the same test as used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, we view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).
 
 
 14
 The fact that both parties have filed summary judgment motions does not alter the standard by which we review these motions. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."
 
 
 15
 Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991) (quoting Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed.Cir.1987)). Under Fed.R.Civ.P. 56(c), summary judgment is proper if all the evidence before the district court " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings, and by affidavits, or by " 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)).
 
 III.
 
 16
 Under the Miller Act, "[b]efore any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States [certain] bonds, which shall become binding upon the award of the contract to such person...." 40 U.S.C. Sec. 270a(a). The Miller Act was designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction contracts. F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 122 (1974). Because "a lien cannot attach to Government property," persons supplying labor or materials on a federal construction project were to be protected by a payment bond. Id. at 121-22. "The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby are matters of federal not state law." Id. at 127.
 
 
 17
 * Carpets Unlimited argues that the district court erred in concluding, as a matter of law, that Carpets Unlimited had a contractual duty to pay the Davis-Bacon Act prevailing wage because nothing in the subcontract refers to the Act or to the wage provisions. The district court held that the general language in the subcontract requiring Carpets Unlimited to perform in accordance with terms of the prime contract "incorporated by reference" the duty to pay Davis-Bacon wages which was quite extensively detailed in the prime contract. Incorporation by reference, however, is a term of art, and not every reference is the equivalent to substantive incorporation.
 
 
 18
 In an ordinary contract case in which we interpreted incorporation language almost identical to that involved here, we held that a chain of incorporation running through a prime contract, a subcontract, and a performance bond rendered disputes under the performance bond subject to the prime contract's arbitration clause. Exchange Mut. Ins. Co. v. Haskell Co., 742 F.2d 274, 275-76 (6th Cir.1984). In Haskell, the clear meaning of the reference in the subcontract to the prime contract was to incorporate the conditions of the prime contract into the subcontract. But this is not an ordinary contract case; this case falls under the Miller Act. Historically, courts have viewed incorporation by general reference with skepticism in Miller Act cases. See J.S. & H. Constr. Co. v. Richmound County Hosp. Auth., 473 F.2d 212, 215 (5th Cir.1973). The Miller Act establishes specific statutory rights intended to protect subcontractors, and courts are reluctant to conclude that a subcontractor abandoned those rights absent language of specific incorporation. See, e.g., United States v. Fryd Constr. Corp., 423 F.2d 980, 983-84 (5th Cir.), cert. denied, 400 U.S. 820 (1970); H.W. Caldwell & Son, Inc., et al., v. United States, 407 F.2d 21, 23 (5th Cir.1969); Fanderlik-Locke Co. v. United States, 285 F.2d 939, 942 (10th Cir.1960), cert. denied, 365 U.S. 860 (1961); General Contracting Corp. v. United States, 70 F.2d 83, 85 (4th Cir.1934).
 
 
 19
 Further, Carpets Unlimited argues that Interstate's failure to include in the subcontract a direct reference to the Davis-Bacon wage provisions violates a federal regulation, 29 C.F.R. Sec. 5.5(a)(6), which requires that the general contractor "insert" in that subcontract ten clauses from the Davis-Bacon Act, including the clause which provides for prevailing wages. 29 C.F.R. Sec. 5.5(a) provides in part:
 
 
 20
 (a) The Agency head shall cause or require the contracting officer to insert in full in any contract in excess of $2,000 which is entered into for the actual construction, alteration and/or repair ... of a public building ... the following [ten] clauses....
 
 
 21
 ....
 
 
 22
 (6) Subcontracts. The contractor or subcontractor shall insert in any subcontracts the clauses contained in 29 C.F.R. 5.5(a)(1) through (10) and such other clauses as the (write in the name of the Federal agency) may by appropriate instructions require, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the contract clauses in 29 CFR 5.5.
 
 
 23
 (Emphasis added.) The parties to the prime contract did "insert in full" the ten clauses contained in C.F.R. 5.5(a)(1) through (10). Indeed, the regulation is reproduced as a provision of the prime contract. The subcontract, however, does not set out the ten clauses of the regulation, nor does it refer to the regulation or the Act.
 
 
 24
 The district court held that the regulation's use of the term "insert," with respect to the subcontract, means something less than "insert in full," which is required for the prime contract:
 
 
 25
 While "insert in full" would foreclose any abbreviation of the clauses in the general contract before us, the term "insert" in the instruction to contractors and subcontractors would appear to allow latitude for Interstate's incorporation by reference of those clauses. Thus, we conclude that incorporation by reference of the clauses set out in full in the general contract is sufficient to meet the regulation's requirements, and Carpet Unlimited's challenge to the validity of the subcontract must fail.
 
 
 26
 We disagree.
 
 
 27
 In interpreting a contract, courts should give the words used their ordinary, common sense, and generally accepted meaning. Robich v. Patent Button Co., 417 F.2d 890, 892 (6th Cir.1969) (McCree, J.). Insert means to put or set something into another ("insert a key into a lock") or to introduce into the body of a text, interpolate. American Heritage Dictionary 679 (1981). In its ordinary meaning, the command to "insert" requires actually placing the thing into another thing. In this context, "insert" must mean substantially the same thing as "insert in full." Clearly, the regulation's requirements were not inserted here--in full or otherwise.
 
 
 28
 We conclude that under the regulation, Interstate was obligated to insert into the subcontract the clauses contained in 29 C.F.R. Sec. 5.5(a)(1) through (10) which require, among other things, compliance with the Davis-Bacon Act. The Davis-Bacon Act requires that persons employed on federally funded construction projects be compensated at the rate prevailing for comparable work in the area. 40 U.S.C. Secs. 276 et seq. "On its face, the Act is a minimum wage law designed for the benefit of construction workers." United States v. Binghamton Constr. Co., 347 U.S. 171, 178 (1954). The Act provides that the advertised specifications for federal contracts covered by that Act shall contain a prevailing wage requirement and every contract entered into based on such specifications shall contain a prevailing wage stipulation. 40 U.S.C. Sec. 276a(a).
 
 
 29
 The general rule is that statutory provisions are deemed to be incorporated into contracts. See, e.g., Norfolk & Western Ry. v. American Train Dispatchers Ass'ns, 499 U.S. 130-31 (1991); 2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp., 924 F.2d 1247, 1254 (2d Cir.), cert. denied, 112 S.Ct. 83 (1991). However, the Davis-Bacon Act is an exception to the general rule. In Universities Research Assoc., Inc. v. Coutu, 450 U.S. 754 (1981), the Supreme Court confronted the issue of whether a private right of action existed for employees to bring suit to enforce prevailing wage provisions of the Act. In discussing whether the statute created a private right of action, the Supreme Court considered whether the provisions of the Davis-Bacon Act should be considered to be incorporated by operation of law into contracts for work covered by the Act. The Court held that they were not. To hold otherwise would
 
 
 30
 ignore[ ] the fact that the Act does not define the terms "construction, alteration and/or repair," "public buildings or public works," and "mechanics and/or laborers." A number of commentators have noted the difficulty of determining whether particular work constitutes "construction" within the meaning of the Act.... Like other contracting agencies, [the Atomic Energy Commission] and its successors have developed detailed guidelines for determining whether particular work is covered by the Act.
 
 
 31
 Id. at 783-84 (footnotes omitted). The Court distinguished the Davis-Bacon Act from other acts which are self-implementing. Id. at 784 n. 38.
 
 
 32
 We do not think that the general language in the subcontract purporting to bind the subcontractor "to perform all work ... in accordance with the general contract" and binding the subcontractor "to assume toward the contractor all the obligations ... the contractor assumes toward the owner" is specific enough to result in an incorporation by reference of the Davis-Bacon wage provision set out in the prime contract. That is especially so since the regulation's command to "insert" in the subcontract the critical ten clauses applying Davis-Bacon wage provisions was not obeyed. Carpets Unlimited's contractual duty to perform its work in conformity with "federal, state, and local laws" does not include an obligation to pay Davis-Bacon wages, since that duty cannot arise merely by operation of law. Id. Therefore, we conclude that the district court erred in awarding Interstate $7,825.37 in damages for Carpets Unlimited's failure to pay Davis-Bacon wages. Carpets Unlimited had no contractual duty to pay the prevailing wage since Interstate failed to disclose the wage scale in the subcontract. The acknowledgment referring to the Davis-Bacon Act that Carpets Unlimited signed three months after entering into its contract with Interstate fails to alter the equation. If the acknowledgment was an attempted modification of the subcontract, it fails for want of consideration.
 
 B.
 
 33
 Next, Carpets Unlimited argues that the district court erred in denying it recovery in quantum meruit. Our treatment of this issue, as will be evident shortly, necessarily relates to Interstate's claim for completion costs as well. The thrust of Carpets Unlimited's argument is that Interstate breached the subcontract by failing to pay Carpets Unlimited within seven days of receiving payment from the federal government. Quantum meruit is a theory of implied in law contract in which recovery is had where a benefit has been received by a defendant and it would be unjust or inequitable for the defendant to retain it. The theory now falls under the modern rubric "restitution." E. Allan Farnsworth, Contracts Sec. 2.20 at 103 (2d ed. 1990). Even a party in breach may recover in quantum meruit to avoid unjust enrichment so long as the breach was not willful.
 
 
 34
 Carpets Unlimited argues that this is a classic quantum meruit case: the prime contractor materially breached the subcontract by failing to timely pay and thus the subcontractor may suspend performance, rescind the contract, and sue in quantum meruit for the value of the services rendered. See, e.g., United States ex rel. Coastal Steel Erectors, Inc. v. Algernon Blair, Inc., 479 F.2d 638, 641 (4th Cir.1973); Scaduto v. Orlando, 381 F.2d 587, 595 (2d Cir.1967); St. Paul-Mercury Indem. Co. v. United States ex rel. Jones, 238 F.2d 917, 922-24 (10th Cir.1956). Of course, Carpets Unlimited's right to recovery depends upon whether Interstate materially breached the subcontract when it failed to pay Carpets Unlimited at the agreed upon time. United States ex rel. Pickard v. Southern Constr. Co., 293 F.2d 493, 498-99 (6th Cir.1961), rev'd on other grounds, 371 U.S. 57 (1962). Failure to perform within the time limits stated in a contract is generally not a material breach if performance is rendered with a reasonable time. However, if the nature of the contract makes timely performance essential, or if the contract expressly provides that time is of the essence, then failure to perform on time is a material breach. In the context of a construction contract, Professor Corbin writes:
 
 
 35
 If the nonpayment is held to be a vital breach, going to the essence, either because it is expressly so provided in the agreement or because it is relatively so important and its results so injurious to the builder, the builder is at once legally privileged not only to suspend performance but to renounce the contract forever.
 
 
 36
 Arthur L. Corbin, 3 Corbin on Contracts, Sec. 693 at 275 (1960). In Pickard, a case in which a contractor neglected to pay all but one of a series of progress payments due to a subcontractor, we observed:
 
 
 37
 In a building or construction contract calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed. Under such circumstances the [subcontractor] cannot be expected to finance the operation to completion without receiving the stipulated payments on account as the work progresses.
 
 
 38
 293 F.2d at 498; accord United States v. Community Science Tech., Inc., 574 F.2d 1292, 1295 (5th Cir.1978); United States Fidelity & Guar. Co. v. Robert Grace Contracting Co., 263 F. 283, 291-92 (3d Cir.1920). Professor Corbin makes clear, however, that if the late payment is not a material breach, the builder is entitled to suspend performance but may not rescind the contract. Corbin, supra Sec. 693 at 274; accord Scaduto, 381 F.2d at 594-95; United States ex rel. Susi Contracting Co. v. Zara Contracting Co., 146 F.2d 606, 610-11 (2d Cir.1944).
 
 
 39
 The Restatement (Second) of Contracts sets out a series of factors to determine whether a breach is material:
 
 
 40
 (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
 
 
 41
 (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
 
 
 42
 (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
 
 
 43
 (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
 
 
 44
 (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.
 
 
 45
 Restatement (Second) of Contracts Sec. 241 (1981). Materiality then is a question to be determined by examining the circumstances of the particular case, Conn Aire, Inc. v. J.C. Leasing, No. 90-5143, 1990 WL 209580 at * 6, 1990 U.S.App. LEXIS 22363 at * 18 (6th Cir. Dec. 19, 1990) (unpublished); Todd v. Heekin, 95 F.R.D. 184, 186 (S.D.Ohio 1982), and thus is normally a question for the trier of fact. 6 Samuel Williston, A Treatise on the Law of Contracts Sec. 841 at 159 (3d ed. 1962). In Judge Cardozo's words, "[w]here the line is to be drawn between the important and the trivial cannot be settled by a formula.... The question is one of degree, to be answered, if there is doubt, by the triers of the facts...." Jacob & Youngs v. Kent, Inc., 129 N.E. 889, 891 (N.Y.1921). The question of materiality need not be left to the trier of fact and may be decided on summary judgment where the underlying facts are not disputed and the court can hold, as a matter of law, that the breach is material. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1530 (9th Cir.1993), rev'd on other grounds, 114 S.Ct. 1023 (1994). If Interstate's failure to make a timely payment was a material breach, Carpets Unlimited was entitled to rescind the contract and perhaps recover against Interstate in quantum meruit; if, however, the breach was not material, Carpets Unlimited breached its obligation to perform under the contract for the agreed upon $21,012 price, and Interstate would be entitled to damages in the amount of the costs of completion. There is no indication that the district court considered the issue of the materiality of the breach and yet both Carpets Unlimited's quantum meruit claim and Interstate's claim for completion costs turn upon that issue. It appears that there is a genuine issue of material fact concerning the materiality of Interstate's untimely payment, and thus the district court erred in entering summary judgment rejecting Carpet's Unlimited's quantum meruit claim and Interstate's claim for completion costs.
 
 C.
 
 46
 Carpets Unlimited argues that it is entitled to punitive damages based on Interstate's fraud and bad faith. We conclude that this argument is without merit: Carpets Unlimited knew that the Davis-Bacon Act governed the project and simply applied the wrong wage scale. There is no evidence to suggest that Interstate represented to Carpets Unlimited that the Davis-Bacon Act did not apply. Therefore, no fraudulent notice or bad faith can be attributed to Interstate.
 
 D.
 
 47
 Finally, Interstate argues that the district court erred in not awarding attorney fees for the cost of defending and prosecuting the suit of Carpet's Unlimited and its cross-claim. The short answer is that attorney fees are not available under the Miller Act. See F.D. Rich Co., 417 U.S. at 127. Under federal law, the traditional American rule applies that each party bears its own legal costs absent an enforceable contractual provision or evidence of bad faith. Id. at 126. Here, Interstate argues that it can recover its legal costs under the hold harmless clause included in its subcontract with Carpets Unlimited. But whether it can depends in part upon whether Interstate materially breached the subcontract with Carpets Unlimited, and that issue must be taken up on remand.
 
 IV.
 
 48
 We REVERSE the judgment below and REMAND the case to the district court for further proceedings consistent with this opinion.