### Shayne BROWN

v.

### WESTERN CONNECTICUT STATE UNIVERSITY, et al.

No. 3:01CV1017 (JBA).

United States District Court, D. Connecticut.

May 8, 2002.

Clifford L. Tager, Joseph J. Unfried, Danbury, CT, for Plaintiff.

Beth Z. Margulies, Attorney General's Office, Hartford, CT, for Defendants.

## MEMORANDUM OF DECISION [# 18]

ARTERTON, District Judge.

Plaintiff Shayne Brown, a former student at Western Connecticut State University ("WCSU"), sued the university, several of its administrators and the Board of Trustees of the Connecticut State University System after he was expelled following an investigation of allegations that he and two other students had changed their grades. Plaintiff brings this suit under 42 U.S.C. §§ 1983, 1985 and 1986, alleging that his due process rights were violated during the disciplinary hearing and that he was expelled for his previous criticisms of the administration, rather than based on any evidence that he had falsified his grades. He also asserts a negligence claim against WCSU and its trustees, based on their alleged failure to ensure that the Student Handbook procedures for dealing with disciplinary problems contained adequate constitutional safeguards.

Defendants have moved to dismiss the action under Fed.R.Civ.P. 12(b), on the grounds that plaintiff's claims are barred by sovereign immunity, quasi-judicial and prosecutorial immunity and statutory im-

munity, and that the complaint fails to state a claim upon which relief can be granted. For the reasons discussed below, defendant's motion is GRANTED IN PART and DENIED IN PART.

## I. Standard of review

When considering a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 127 (2d Cir.2001). A motion to dismiss will be granted when if the Court is "satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." *Id.*

## II. Factual allegations

Applying this standard, the following describes the relevant facts as alleged in plaintiff's complaint. Plaintiff was an active member of WCSU's student government prior to his expulsion in 2000. He served as one of the two Justices on the Student Government Association during the 1997–98 and 1998–99 terms, was the Chief Justice of the Student Government Association in 1999–2000, and in April 1999, was elected President of the Class of 2000. In addition, he was a staff columnist for the student newspaper.

Plaintiff's criticisms of the WCSU administration began in 1997, when he argued about perceived spending waste at WCSU before the Connecticut state legislative Committee on Higher Education. In November 1998, he filed an ethics complaint against defendant James Roach, WCSU president, alleging improprieties in Roach's refusal to permit students to stay in WCSU dormitories during the summer recess while allowing his family and friends to stay in the dorms. In February 1999, he attended a meeting of the WCSU Appointment Committee and challenged

the qualifications of defendant Lorraine Capobianco who was being considered for appointment to the position of Executive Officer, Information Technology, and was subsequently appointed to that position. In March 1999, plaintiff participated in several student demonstrations regarding the administration's refusal to permit the acting Director of Student Life to interview for the position of Director of Student Life, and during one of those demonstrations, in an exchange that was later reported on the front page of the Danbury News–Times and carried on the campus radio station, plaintiff suggested that defendant Roach resign from his position as President of WCSU. Also in March 1999, plaintiff submitted Freedom of Information Act requests for documents relating to defendant Roach's travel and payroll records, and allegedly found "some inconsistencies between the dates Mr. Roach was out of the office on personal time and the dates Mr. Roach allegedly claimed to be at work." Revised Compl. ¶ 35E.

On September 14, 1999, defendant Constance Wilds, interim Vice President and Dean of Student Affairs at WCSU, filed a complaint against three students—plaintiff, Andrew Milkovic and Calico Forrest—alleging that they had thirty-eight unauthorized grade changes on their transcripts and had violated the Student Handbook, thus subjecting them to possible disciplinary action including expulsion. A hearing was held on November 29, 1999, at which defendant Catherine Hickey–Williams presided. Defendants Capobianco and Henry Tritter, Registrar of Student Affairs, prosecuted the charges on behalf of WCSU.

According to plaintiff, various improprieties occurred during the disciplinary hearing. First, he was not provided with a complete copy of all witness reports and evidence that was to be used against him .

at the hearing, in violation of the WCSU Student Handbook. Plaintiff was allegedly provided with only six pages of computer logs and was informed that defendant Richard Parmalee, WCSU Systems Manager of University Computing, would be the only witness. At the hearing, Parmalee referred to additional computer logs, and plaintiff was advised by defendant Capobianco that there were approximately 350 pages of logs.[1] In addition, four witnesses—including defendants Capobianco and Tritter, who were prosecuting the charges for WCSU—testified against Brown at the hearing. Plaintiff also alleges that the incident report given to him was too vague to permit him to defend against the charges, and that the hearing testimony of one of the witnesses, who was unnamed in the incident report, was materially different from what was contained incident report. Finally, plaintiff's attorney was not permitted to participate in the hearing, and defendant Capobianco is alleged to have stated during the hearing that plaintiff was required to prove that he did not commit the alleged violations.

> According to plaintiff,
> [t]he only evidence presented against Mr. Brown was that his account was logged in the WCSU computer system at the time the grades were allegedly altered. Although Mr. Parmalee and Ms. Capobianco testified that Mr. Brown was sitting at a computer terminal at one such occasion, several eye witnesses testified that the computer terminal was both turned off and unplugged at that time, the room having just undergone major renovations. At all other times, Mr. Brown was either in a Student Government meeting, with a faculty member or in class, and testimony was provided

which established these facts; all of these facts were uncontroverted and the witnesses unimpeached.

Revised Compl. ¶ 39. Moreover, Mr. Tritter admitted in his closing argument that WCSU had "failed to introduce any evidence which established that Mr. Brown was either directly or indirectly responsible for any grade changes." *Id.* at ¶ 40. Plaintiff's "co-defendants," Milkovic and Forrest, were found not responsible for the charges based on a lack of evidence. Plaintiff, however, received a letter from defendant Wild stating that he had been found guilty and was immediately expelled from WCSU. The letter did not outline the basis for Wild's decision.

Brown filed a timely appeal and requested that his expulsion be stayed to permit him to continue his studies pending the outcome of the appeal. However, while WCSU allegedly had stayed expulsion "on numerous other occasions for students found guilty of 'violent acts,' including at least one situation that involved weapons, WCSU did not stay Mr. Brown's expulsion pending his appeal." *Id.* at ¶ 46. During the appeal process, additional improprieties are alleged to have occurred, including defendant Roach's appointment of defendant Eugene Buccini, Vice President of Academic Affairs, as hearing officer, in violation of the provisions of the Student Handbook, which requires the hearing officer to be either the Dean of Student Affairs (defendant Wilds) or her designee. However, Wilds allegedly stated to plaintiff that Buccini was Roach's choice, rather than hers. Second, plaintiff charges that the appeal hearing was not tape recorded, also in violation of the Handbook.

Plaintiff alleges that defendants Roach and Capobianco were biased against him

---

**1.** However, plaintiff also alleges that as a result, defendant Hickey–Williams required WCSU to provide plaintiff with a complete copy of the logs by December 4, 1999, and continued the hearing to January 24, 2000 to allow him to review the computer logs and present additional evidence.

because of his past confrontations with them, and used their positions to retaliate against him for the exercise of his right to free speech. He also alleges that his due process rights were violated during both the original hearing and the appeal. Finally, plaintiff alleges that WCSU, President Roach and the Board of Trustees failed to ensure that the Student Handbook was approved by the Connecticut Attorney General's Office and that its provisions were constitutional.

More specifically, in Count One, plaintiff seeks *de novo* review of the disciplinary action against him, claiming that it violated his constitutional rights to free speech and due process. Counts Two, Three, and Four are against defendants Roach, Wilds, Capobianco, Hickey–Williams, Tritter, Parmalee and Buccini. Count Two alleges that they violated his constitutional rights to free speech and due process under § 1983 by using their position to orchestrate his improper expulsion. Count Three alleges that they violated § 1985, subsection 2, by charging plaintiff with a Class A disciplinary action simply because the hearing disrupted classes by requiring the presence of students and staff. Count Four asserts that these same defendants had knowledge of and power to prevent these wrongful acts, in violation of § 1986. Finally, Count Five is a negligence action against WCSU, defendant Roach in his official capacity and the various members of the Board of Trustees, in their official capacity, based on the alleged failure to ensure that the Student Handbook's disciplinary procedures were constitutional and approved by the Office of the Connecticut Attorney General.

As relief, plaintiff seeks *de novo* review of the disciplinary charges, monetary damages, declaratory relief that the guilty verdict was legally and procedurally flawed, and injunctive relief, including reversing the guilty verdict, reinstating plaintiff as a student at WCSU, permitting plaintiff to register and attend classes at WCSU, requiring WCSU to reimburse plaintiff for money spent for the spring semester in 2000, and permanently enjoining defendants from initiating or participating in any discipline against plaintiff based on the allegations of grade changing or this litigation.

### III. Discussion

Defendants have moved to dismiss the entire complaint. They argue that the negligence claim in Count Five against WCSU, President Roach in his official capacity and the Trustees in their official capacity are barred by the Eleventh Amendment, that even assuming arguendo that the Court had jurisdiction over these claims, Connecticut General Statutes § 4–165 bars the action because plaintiff has not exhausted his administrative remedies, and that the failure to serve all the Trustees would require dismissal as they are indispensable parties under Fed.R.Civ.P. 19. The WCSU defendants[2] argue that any claims based on their participation in the disciplinary hearing must be dismissed because they are entitled to quasi-judicial or prosecutorial absolute immunity from suit. In addition, they claim that plaintiff has failed to state a due process violation. They also argue that plaintiff has not alleged personal involvement by many of them as is required for a § 1983 action, and that the allegations of plaintiff's

**2.** Defendants Roach, Wilds, Capobianco, Hickey–Williams, Tritter, Parmalee and Buccini in their individual capacity only. While these defendants moved to dismiss any constitutional claims against them in their official capacity, plaintiff's response states that Counts Two through Four are only individual capacity claims, and the Court so construes the complaint.

§ 1985 and § 1986 claims fail to state a claim upon which relief can be granted.

### A. Negligence claim against WCSU, Roach and the Trustees (Count Five)

■ Defendants argue that a negligence claim against WCSU, a state university, and its president and trustees in their official capacity is in effect a suit against the state itself, and is therefore barred by the Eleventh Amendment's guarantee of state immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to mean that states, as sovereigns, are immune from suit in federal court absent consent or abrogation of that immunity by Congress. *Seminole Tribe v. Florida*, 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

■ This bar to suit in federal courts extends not only to the state itself but also to any entity that is deemed to be an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (the Eleventh Amendment bars actions in federal court when "the state is the real, substantial party in interest."). In determining whether a suit against a state agency is barred by the Eleventh Amendment, "whether liability will place the state treasury at risk, although not exclusively determinative, is the single most important factor." *Feeney v. Port Authority Trans–Hudson Corp.*, 873 F.2d 628, 631 (2d Cir.1989).

In *Pikulin v. City University of New York*, 176 F.3d 598 (2d Cir.1999), the Second Circuit noted that in determining "whether, for purposes of the Eleventh Amendment, CUNY can properly be characterized as an 'arm of the state' . . . [the inquiry] focuses both on the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity and on the degree of supervision exercised by the state over the defendant entity." *Id.* (internal citations omitted). Because the cases the district court cited rested on a provision of state law that required the state to indemnify *individuals* affiliated with CUNY, but did not address the state's financial responsibility to satisfy judgments entered against CUNY itself, the Second Circuit concluded that the record did not support a finding that CUNY was an arm of the state, and remanded for further proceedings, instructing the defendant to "develop a record sufficient to allow the district court to consider fully CUNY's relationship to the state." *Id.* at 601.

Applying this standard, where a state agency such as WCSU seeks dismissal for lack of jurisdiction on grounds of Eleventh Amendment immunity, the Court must determine whether the relationship between the state and the agency is such that the agency should be considered an arm of the state. Relevant factors include whether the state would be liable for a money judgment against WCSU and the degree of supervision exercised by the state over WCSU. Unfortunately, neither defendants nor plaintiff adequately address this issue. Defendants simply state that they are entitled to immunity under *Pennhurst*, and appear to be assuming that a suit against WCSU, President Roach and the Board of Trustees should be considered a suit against an arm of the state for purposes of

plaintiff's claim. Plaintiff, while arguing that sovereign immunity should not bar the action, does not dispute that WCSU is an arm of the state.

From the Court's review of the relevant case law and Connecticut statutes, it appears that the Connecticut state universities are entitled to claim immunity under the Eleventh Amendment analysis. *See, e.g., Barde v. Board of Trustees of Regional Comm. Colleges,* 207 Conn. 59, 64, 539 A.2d 1000 (1988) ("Although the named defendant here is the board of trustees of regional community colleges, these colleges are state public institutions and the real party in interest is the state."); *Rogan v. Board of Trustees,* 178 Conn. 579, 582–84, 424 A.2d 274 (1979) (board of trustees of state colleges is entitled to sovereign immunity); *Hynes v. Southern Conn. State Univ.,* 2001 WL 822330, * 1 (Conn.Super. June 15, 2001) (SCSU is entitled to sovereign immunity); *Dery v. Southern Conn. State Univ.,* 1998 WL 738060 (Conn.Super. Oct. 8, 1998) (same); *see also Narumanchi v. Board of Trustees of the Conn. State Univ.,* 1986 WL 15753, * 5–6 (D.Conn. Oct. 6, 1986) (holding that the CSU Board of Trustees, and individual trustees sued in their official capacity, are "a political arm of the state and as such [are] immune from suit"). Significant control is retained by the legislative and executive branches of government over the Board of Trustees, which controls WCSU and the other Connecticut State Universities. *See* Conn.Gen.Stat. §§ 10a–87 to 10a–99. While the Board of Trustees has significant control and discretion over state education matters, their autonomy is limited. *See Stolberg v. Caldwell,* 175 Conn. 586, 602–03, 402 A.2d 763 (1978). In addition, WCSU receives funding from the state treasury, and Conn.Gen.Stat. § 10a–89 provides that "[t]he board [of trustees] may request authority from the treasurer to issue payment for claims against the state university system, other than a payment for payroll, debt service payable on state bonds to bondholders, paying agents, or trustees, or any payment the source of which includes the proceeds of a state bond issue." Accordingly, the Court concludes that WCSU—and its President and Trustees in their official capacity—is an "arm of the state" and is entitled to raise Eleventh Amendment immunity in defense of this suit.

Plaintiff argues that there is no immunity for suits seeking to compel state officials to fulfil their constitutional and statutory duties, citing *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). While plaintiff argues that these defendants set in motion the actions that violated his constitutional rights of due process and free speech, Count Five plainly alleges only common law negligence, a state law claim. As defendants note, under *Pennhurst,* 104 S.Ct. at 911, the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits suit against state officers to enjoin the future violation of federal law, is "inapplicable in a suit against state officials on the basis of state law," and Count Five must be dismissed.[3]

### B. Section 1983 claims against WCSU defendants (Count Two)

The WCSU defendants argue that the constitutional claims are barred by quasi-judicial and/or prosecutorial absolute immunity from suit, as they relate to defen-

---

**3.** As Count Five must be dismissed on the basis of the state's immunity from suit, the Court does not reach the defendants' alternative arguments that plaintiff has failed to exhaust his administrative remedies under Conn.Gen.Stat. § 4–165, that the Court lacks "pendant party" jurisdiction over the trustees, and that the failure to properly serve several of the trustees requires dismissal.

dants' conduct in regard to the disciplinary hearing process, citing *Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Alternatively, they argue that the allegations of personal involvement are insufficient to support a claim against defendants Roach, Wilds and Parmalee, that there is insufficient allegation of a causal connection to establish retaliation, and that the decision of appeals officer Buccini broke any causal link between the retaliation and plaintiff's expulsion. The Court considers these arguments in turn.

### 1. Absolute immunity

■■■ "Absolute immunity confers complete protection from civil suits." *Tulloch v. Coughlin,* 50 F.3d 114, 116 (2d Cir.1995) (distinguishing absolute immunity from qualified immunity, which protects government officials from civil suit if the official did not violate a clearly established right that a reasonable person would have been aware of, or it was objectively reasonable for the official to believe that his actions would not violate a clearly protected right). Ordinarily, in a suit for damages arising from unconstitutional action, officials are entitled only to qualified immunity, "subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Butz,* 438 U.S. at 508, 98 S.Ct. 2894. Thus, the Supreme Court has recognized that there are some officials whose duties require a full exemption from liability, including judges performing judicial acts within their jurisdiction, *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871), prosecutors in the performance of their official functions, *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), and certain "quasi-judicial" agency

officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court. *Butz,* 438 U.S. at 511–17, 98 S.Ct. 2894.

■■■ Plaintiff argues that *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), which held that a school board member who participated in a student disciplinary procedure was entitled only to qualified rather than absolute immunity, requires rejection of defendants' claim of absolute immunity. The Court agrees. In *Wood,* the Supreme Court considered whether absolute immunity should apply in the context of student discipline, and expressly rejected that contention, noting that "absolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations." *Id.* at 320, 95 S.Ct. 992.

Defendants argue that *Wood* is not binding because it pre-dates *Butz.* However, *Butz,* which was decided only three years after *Wood,* does not overrule *Wood,* and in fact, cites it in support of the proposition that state officials are not generally entitled to absolute immunity for constitutional violations. The discussion of quasi-judicial immunity in *Butz,* which limited absolute immunity to "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business," 438 U.S. at 507, 98 S.Ct. 2894, provides no basis for defendants' contention that the Supreme Court called into question its conclusion in *Wood* that absolute immunity was not necessary in that context.[4] Accordingly, the

**4.** The Court also notes that Supreme Court cases since *Butz* have continued to cite *Wood* in support of the proposition that qualified

immunity rather than absolute immunity applies to claims brought against school board members. *See, e.g., Cleavinger v. Saxner,* 474

Court concludes that defendants are entitled to raise only the defense of qualified immunity. *See Smith v. Rector and Visitors of Univ. of Va.,* 78 F.Supp.2d 533, 539 (W.D.Va.1999) (university president acting as decisionmaker in a school disciplinary procedure entitled only to qualified immunity) (citing *Wood,* 420 U.S. at 320, 95 S.Ct. 992); *cf. Purisch v. Tennessee Tech. Univ.,* 76 F.3d 1414, (6th Cir.1996) (university president and dean not entitled to absolute immunity for participation in grievance committee hearing reviewing professor's denial of tenure).

### 2. First Amendment retaliation claim

▇▇▇ Defendants Roach, Wilds and Parmalee argue that plaintiff has not alleged sufficient personal involvement by them to support his § 1983 retaliation claim. In a § 1983 action, the defendant must be responsible for the alleged constitutional deprivation. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *AL–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). "[T]he general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." *Al–Jundi,* 885 F.2d at 1065 (internal quotations omitted). "[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (*citing Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976); *Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir.1975)). Personal involvement for purposes of § 1983 consists of direct participation or "failure to remedy the alleged wrong after

learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

Recently, the Supreme Court has reiterated that under Fed.R.Civ.P. 8(a)(2)'s requirement that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must "simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (*quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Id.* None of these exceptions are applicable here. *See* Fed.R.Civ.P. 9. While the Supreme Court recognized that such a liberal pleadings rule might result in allowing lawsuits based on somewhat conclusory allegations to go forward, "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. 'Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test.'" *Swierkiewicz,* 122 S.Ct. at 999 (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Instead, the Court's inquiry on a motion to dismiss for failure to state a claim is only whether " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 998 (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). With this standard in mind, the Court considers defendants' arguments that the § 1983 retali-

U.S. 193, 201, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (" 'For executive officials in general, however, our cases make plain that qualified

immunity remains the norm.' ") (*citing, inter alia, Wood,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214).

ation claims against Roach, Wilds and Parmalee fail to state a claim upon which relief can be granted.

█ Plaintiff has alleged that President Roach was "antagonistic towards Mr. Brown based on Mr. Brown's past confrontations therewith, and used [his position] to punish Mr. Brown for exercising his right of free speech under the First Amendment of the United States Constitution." Revised Compl. ¶ 51A. The complaint also alleges that "[b]y expelling Mr. Brown on charges for which no factual evidence was presented at the Hearing, the defendants punished him for exercising his Constitutionally-guaranteed right of free speech." *Id.* at ¶ 51D. Moreover, plaintiff has alleged specific facts that suggest that Roach, Copabianco and Wilds may have had bias against him based on his past criticisms of their administration, although the only specific allegation relating to Roach's involvement in the disciplinary process is that Roach appointed Buccini to hear the appeal. *Id.* at ¶ 51B. However, plaintiff also alleges that the defendants collectively orchestrated his expulsion. *Id.* at ¶ 58. Taken together, the Court cannot conclude that no set of facts could be proved consistent with this allegations that would state a claim of retaliation. While plaintiff may not yet know the details of the alleged conspiracy, that is precisely the purpose of discovery under the liberal pleading rules.

The Court similarly concludes that the complaint states a claim against Wilds, who is alleged to have filed the original charges against plaintiff, *id.* at ¶ 37, informed plaintiff that only one witness would testify against him plaintiff at the hearing, *id.* at ¶ 39A, informed plaintiff that he would receive a copy of the witness reports prior to the hearing, but plaintiff never received any reports, *id.* at ¶ 39D, and finally, informed plaintiff that he was found guilty, *id.* at ¶¶ 43, 44. Thus, while defendant Hickey–Williams is alleged to have presided over the initial hearing, *id.* at ¶ 38, plaintiff alleges that Wilds made the decision to expel him, *id.* at ¶¶ 43, 51C. As noted above, plaintiff generally alleges that the defendants orchestrated his expulsion in retaliation for his exercise of his First Amendment rights. In light of the allegation that Wilds had been the subject of plaintiff's criticism in the past, as well as her alleged involvement in the decision to expel him, the Court concludes that plaintiff has stated a claim against defendant Wilds.

Finally, defendant Parmalee, a witness at the hearing, is alleged to have testified that plaintiff was sitting at a computer station at one time when his grades were allegedly changed. *Id.* at ¶ 39K. Plaintiff further alleges that other witnesses testified that he was not logged on at that time, thus implying that Parmalee testified falsely. Although there is no allegation that Parmalee was ever the subject of plaintiff's criticism, plaintiff's allegations that the defendants collectively orchestrated his expulsion, together with Parmalee's alleged role in the hearing, are sufficient to require further discovery as to Parmalee's precise role, and could be found to support a § 1983 retaliation claim. Accordingly, the Court denies the motion to dismiss as to these three defendants.

Defendants also argue that there is insufficient evidence to support a causal connection between the protected speech and the alleged retaliation. However, as plaintiff's counsel correctly notes, such an argument is directed at the sufficiency of plaintiff's evidence, and as such is improper at the motion to dismiss stage. Plaintiff's complaint alleges that he was a vocal critic of the WCSU administration, outlines specific acts of criticism directed at Roach, Wilds and Capobianco, and alleges that the decision to expel him was punishment for

engaging in constitutionally protected speech. These allegations are sufficient to require further discovery on whether a causal connection exists. Similarly, while the decision of the appeals officer might have "broken the causal link" between the defendant's retaliation and plaintiff's expulsion, *see Taylor v. Brentwood Union Free Sch. Dist.,* 143 F.3d 679, 687 (2d Cir.1998) (teacher not liable for reporting complaints against a co-worker where independent investigation by school district led to discipline), because the defendants' actions during the first hearing are alleged to have materially affected the outcome of that hearing, and the appellate review was based on that tainted first hearing, the Court cannot conclude on a motion to dismiss that their retaliation did not cause plaintiff's expulsion.

### 3. Due process claim

Finally, defendants argue that plaintiff's due process claim must be dismissed as to all defendants because it fails to state a claim upon which relief can be granted. Defendants do not dispute that plaintiff was entitled to some process, but rather claim that accepting all allegations of plaintiff's complaint as true, his due process rights were not violated as a matter of law. The Court agrees.

Plaintiff alleges that by refusing to permit his attorney to participate in the hearing, by not timely providing him with the evidence to be used against him, by not timely identifying the witnesses against him, by requiring him to prove that he had not committed the violations, and by permitting Tritter and Capobianco to prosecute the action and testify as witnesses against him, his due process rights were violated during the initial hearing. He also alleges that his rights on appeal were violated because Buccini was appointed by Roach, rather than by Wilds, as required in the Student Handbook and the proceeding was not tape recorded.

"Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Winnick v. Manning,* 460 F.2d 545, 549 (2d Cir. 1972) (internal citations and quotations omitted). Thus, the Second Circuit has noted that "[t]he right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings." *Id.* (no right to cross-examination where credibility was not at issue). Similarly, the Second Circuit has never recognized an absolute right to counsel in school disciplinary proceedings. *See, e.g., Wasson v. Trowbridge,* 382 F.2d 807, 812 (2d Cir. 1967) (no right to counsel where hearing was investigative, school did not proceed through counsel, and individual was otherwise able to defend himself).

Defendants argue that plaintiff's challenge to the fact that he was not timely provided with the computer logs or the names of the witnesses must fail because plaintiff was granted an adjournment and therefore "the plaintiff was not prejudiced in any way by the lack of knowledge ahead of the first hearing." Def.Br. at 21. Absent any allegation of prejudice resulting from the initial lack of information, the Court concludes that the fact that plaintiff alleges that he was given a two month continuance necessarily cured any procedural defect that might have been caused by the initial failure to provide plaintiff with the documents and names of witnesses who were prepared to testify against him.

Similarly, as to plaintiff's due process challenges to his appeal, the Court notes that there is "no constitutional right to review or appeal after [a] disciplinary hearing which satisfied the essential re-

quirements of due process." *Winnick,* 460 F.2d at 549 n. 5. Further, the only allegations relating to the appeal consist of alleged violations of the Student Handbook—that the appeal hearing was not tape recorded and that Buccini was appointed by Roach rather than Wilds—that do not rise to the level of constitutionally deficient process. As the Second Circuit noted in *Winnick:*

> [W]e are not inclined to hold that every deviation from a university's regulations constitutes a deprivation of due process. Here the alleged deviations did not rise to constitutional proportions and did not constitute in themselves a denial of due process. Furthermore, the alleged deviations were minor ones and did not affect the fundamental fairness of the hearing.

*Id.* at 550.

Taking all allegations of plaintiff's complaint as true, plaintiff was provided with adequate process such that the hearing and subsequent did not violate his due process rights under the Fourteenth Amendment, and accordingly, the complaint fails to state a claim upon which relief can be granted.

### C. Section 1985 claim (Count Three)

Defendants argue that plaintiff's § 1985 claim must be dismissed because no interference with any state or federal court proceeding is alleged, defendants cannot as a matter of law conspire with themselves as they are all employees of WCSU, there is no allegation of any invidious class-based discriminatory animus, and there is insufficient factual support for the conclusory allegations of conspiracy.

42 U.S.C. § 1985(2) provides in relevant part:

> [I]f two or more persons in any State or Territory conspire for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due course

of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

■■■ Claims under both the second clause of § 1985(2), as alleged here, and § 1985(3) require an allegation of class-based animus. *See Zemsky v. City of New York,* 821 F.2d 148, 150 (2d Cir.1987); *Herrmann v. Moore,* 576 F.2d 453, 458 (2d Cir.1978); *cf. Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (discussing § 1985(3) and noting that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). As plaintiff has not alleged that the conspiracy to charge him with an unfounded violation was motivated by any racial or class-based invidious discrimination, and no facts from which any such motivation could be inferred have been alleged, the § 1985 claim must be dismissed, and the Court does not reach defendants' alternative arguments.

### D. Section 1986 claim (Count Four)

■■■ Finally, defendants argue that the § 1986 claim rises and falls with the § 1985 claim. " '[A] § 1986 claim must be predicated upon a valid § 1985 claim.' " *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir.1997) (*quoting Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993)). Count Four is therefore dismissed as well.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss [# 18] is GRANTED IN PART and DENIED IN PART as follows. Count Two (§ 1983) is dismissed only as to plaintiff's claim of a due process violation. Counts Three, Four and Five are dismissed in their entirety.[5] Thus, the only claims remaining in this case are Count One and plaintiff's § 1983 retaliation claim (Count Two).

IT IS SO ORDERED.

---

**5.** Defendants have not moved to dismiss Count One, which seeks *de novo* review of the disciplinary charges because the expulsion allegedly violated plaintiff's rights to free speech and due process.