**Yvonne OZENNE, et al Plaintiffs,**

v.

**THE UNIVERSITY OF CONNECTICUT HEALTH CARE and Leslie S. Cutler Defendants.**

**No. 398CV01933(GLG).**

United States District Court,
D. Connecticut.

Dec. 1, 2003.

See also, 292 F.Supp.2d 412, 2003 WL 22908137, 292 F.Supp.2d 398, 2003 WL 22908144, 292 F.Supp.2d 385, 2003 WL 22908491.

John Rose, Jr., Levy & Droney, P.C., Farmington, CT, for Plaintiffs.

Carla R. Walworth, Mary C. Dollarhide, Sarah Elizabeth Graves, Paul, Hastings, Janofsky & Walker, Stamford, CT, William N. Kleinman, Attorney General's Office, Farmington, CT, for Defendants.

Peter M. Schultz, Paul, Hastings, Janofsky & Walker, Stamford, CT, for Movant/Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GOETTEL, District Judge.

Pending before the court is defendants' motion for summary judgment on all

claims asserted by plaintiff Yvonne Ozenne in her first amended complaint. For the reasons stated below, the court *grants* defendants' motion for summary judgment (Doc. # 97).

## I. Procedural History and Facts

On February 23, 1999, plaintiff Yvonne Ozenne [1] ["Ozenne"], and three co-workers filed an amended seven-count complaint against the University of Connecticut Health Center ["Health Center"] and Leslie S. Cutler ["Dr. Cutler"]. In the first count, plaintiff alleges that the Health Center engaged in hiring and employment discrimination based on race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and state law,[2] without specifying which law. In the second count, plaintiff alleges that the Health Center denied her equal rights under the law in violation of 42 U.S.C. § 1981. The third count asserts a claim against Dr. Cutler—violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In the fourth count, plaintiff alleges that Dr. Cutler's discriminatory actions violated plaintiff's due process rights. In the fifth count, plaintiff asserts a breach of implied contract claim against the Health Center. In the sixth count, plaintiff asserts a claim of intentional infliction of emotional distress against the Health Center. In the seventh count, plaintiff alleges that the Health Center created a hostile work environment. Plaintiff seeks both compensatory and punitive damages. (Pl.'s Am. Compl.).

■ As an initial matter, defendants, in their reply brief, contend that plaintiff has failed to comply with the District of Connecticut's local rules regarding motions for summary judgment. A party opposing a motion for summary judgment shall submit a document entitled "Local Rule 56(a)2 Statement," which must include "a list of each issue of material fact as to which it is contended there is a genuine issue to be tried." D. Conn. L. Civ. Rule 56(a)2. "Each statement of material fact in a Local Rule 56(a) Statement by a movant or opponent must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. Rule 56(a)3. Defendants complain that plaintiff's submission of twenty-five material facts does not contain any citation to either an affidavit of a witness competent to testify as to the facts at trial or other admissible evidence pursuant to the local rules. (Defs.' Reply Br. at 4). Thus, defendants conclude that all the material facts set forth in their Local Rule 56(a)1 Statement should be deemed admitted and that the court should grant summary judgment in their favor. (*Id.*).

In reviewing the parties' submissions, the court agrees that plaintiff's Local Rule 56(a)2 Statement does not comply with the local rules. *See* Doc. # 119.

In accordance with the Local Rule, this court has repeatedly held that the opposing party's failure to submit a timely Local Rule 56(a)2 Statement will result in the court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)1 Statement. *See*, e.g., *Booze v. Shawmut Bank*, 62 F.Supp.2d 593, 595 (D.Conn. 1999); *Trzaskos v. St. Jacques*, 39 F.Supp.2d 177, 178 (D.Conn.1999). Likewise, the court will deem admitted for purposes of this motion all facts set forth

---

**1.** The other plaintiffs are Elsa Delrio, Goffrey Oliver, and Myriam Sanchez. The court will address defendants' motions for summary judgment against each plaintiff's claims in separate rulings.

**2.** Defendants assume this to be Conn. Gen. Stat. § 46a–70, the Connecticut Fair Employment Practices Act ["CFEPA"]. Plaintiff did not raise any objection to this assumption in her opposition briefs.

in defendants' Local Rule 56(a)1 Statement. Nevertheless, because the court is considering these facts in ruling on a motion for summary judgment, they will be viewed in the light most favorable to plaintiff with all reasonable inferences drawn in favor of plaintiff, as the non-moving party.

A brief summary of the factual background is in order. Defendant Health Center is an educational, research, clinical and health care facility comprised of nine distinct divisions. (Defs.' Statement at ¶ 1). Defendant Dr. Cutler was the Chancellor and Provost for Health Affairs at the Health Center from February 1992 through June 2000; he currently is a part-time Business Development Officer at the University of Connecticut's Center for Science and Technology Commercialization. (*Id.* at ¶ 2). Plaintiff Ozenne, an African American female and current employee, commenced her employment with the Health Center in May 1983 and has been continuously employed by the Health Center since that date. (*Id.* at ¶ 3). At all relevant times, plaintiff has worked as a Dental Assistant in the Health Center's School of Dental Medicine. (*Id.* at ¶ 4).

There is no evidence that plaintiff obtained a right to sue letter from the United States Attorney General. During discovery, plaintiff produced a "Charging Party Copy" of a Dismissal and Notice of Rights, dated June 23, 1998, issued by the Equal Employment Opportunity Commission ["EEOC"]. (*Id.* at ¶ 5). The initial complaint in this case was filed on September 30, 1998, ninety-nine days after the date appearing on the EEOC Dismissal and Notice of Rights. (*Id.* at ¶ 6). Plaintiff filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ["CHRO"] dated September 17, 1997, in which she alleges that Barbara Rudnick, a dental clinic manager, retaliated against plaintiff by "interfering with her performance evaluations and service ratings." (*Id.* at ¶ 7). The word "retaliation" does not appear in Count One or Count Seven of the Amended Complaint. (*Id.* at ¶ 8).

At her deposition, plaintiff testified that Rudnick directed plaintiff's first level supervisors to lower the performance rating on her evaluations, although she has no direct evidence of this. (*Id.* at ¶ 9). Plaintiff testified that during her twenty year career, she received only one evaluation with an overall rating below "good," which was an overall rating of "fair" received in 1994. (*Id.* at ¶ 10). Plaintiff identifies five employment opportunities that she believes she was wrongfully denied—two applications for Dental Administrative Assistant, two applications for Lead Dental Assistant and one application for Floater Dental Assistant. Of the five positions, three were never filled—both of the Lead Dental Assistant positions and one of the Dental Administrative Assistant positions. (*Id.* at ¶ 11). Plaintiff admitted that she never applied for the Dental Administrative Assistant position. (*Id.* at ¶ 12). Plaintiff also admitted that the Floater Dental Assistant position was not a promotion, but a lateral transfer; there was no pay increase. The difference between her then current position and that of a Floater was that the Floater job would allow plaintiff to work in different dental clinics within the Health Center more frequently. (*Id.* at ¶ 13).

The Health Center stated that the Floater position was filled in accordance with the collective bargaining agreement applicable to the New England Health Care Employees Union District 1199 ["Local 1199"]. (*Id.* at ¶ 14). Plaintiff admitted that she is a member of Local 1199 and concedes that lateral transfers are required to be filled on a seniority basis in accordance to the Local 1199 collective bargaining agreement. (*Id.* at ¶ 15).

Plaintiff admitted that the person who filled the Floater position had more seniority than plaintiff. (*Id.* at ¶ 16).

Plaintiff made a complaint in 1993 to the Health Center's Affirmative Action Office that she was not trained in the Health Center's new computer system. (*Id.* at ¶ 17). Plaintiff has not been suspended or received any disciplinary action at any time from January 1, 1997 to present. (*Id.* at ¶ 18). Plaintiff requested light duty work during her pregnancies in 2000 and 2001. (*Id.* at ¶ 19). Plaintiff claims that her supervisor, Delorse Lambert, an African–American female, refused these requests in retaliation for complaints made in the past. (*Id.*). Plaintiff claims that Lambert denied a similar request in February 2003. (*Id.*).

At her deposition, plaintiff testified that she brought her concerns to Dr. Cutler two or three times in the context of group meetings with other employees. (*Id.* at ¶ 20). The only statement she recalls making to Dr. Cutler is that a co-worker, Gina Palluoto, had once referred to plaintiff as a "nigger." (*Id.*).

## II. Standard of Review

The standard for summary judgement is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

### A. Eleventh Amendment

■ In their memorandum of law in support of their motion for summary judgment, defendants contend that plaintiff's CFEPA claim in Count One, the § 1981 claim in Count Two, the breach of implied contract in Count Five and the claim of intentional infliction of emotional distress in Count Six, all against the Health Center, are barred by the Eleventh Amendment. (Defs.' Mem. at 4).

Surprisingly, plaintiff does not address this argument in his memorandum in opposition to defendants' motion. The court notes that in both the first amended complaint and in plaintiff's aforementioned memorandum, the Health Center is described as an agency of the state. (Pl.'s Am. Compl. at 8 and Pl.'s Mem. at 9).

■ The Eleventh Amendment bars suits for money damages against a state or its agencies unless the state has unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The courts have consistently held that Connecticut state universities and their boards of trustees are entitled to claim immunity under the Eleventh Amendment. *Brown v. W. Conn. State Univ.,* 204 F.Supp.2d 355, 361 (D.Conn. 2002). This immunity also extends to state officials sued in their official capacities. *See Gaynor v. Martin,* 77 F.Supp.2d 272, 281 (D.Conn.1999).

▉ A state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through a statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court. *Close v. New York,* 125 F.3d 31, 39 (2d Cir.1997). However, a state may consent to suit in its own courts without consenting to suit in federal court. *Smith v. Reeves,* 178 U.S. 436, 441–45, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).

Under Connecticut law, Conn. Gen.Stat. § 46a–100 [3], Connecticut waived its immunity for suit in state court for CFEPA claims. But it has not clearly expressed a waiver to suit in federal court. Therefore, the courts of this district have consistently found that CFEPA claims against the state or its agents are barred by the Eleventh Amendment. *See Lyon v. Jones,* 168 F.Supp.2d 1, 6 (D.Conn.2001). Count One contains a CFEPA claim against the Health Center, an agent of the State of Connecticut, which is protected by immunity under the Eleventh Amendment. Accordingly, summary judgment in favor of the defendants is granted as to the CFEPA claim in Count One.

**3.** Conn. Gen.Stat. § 46a–100 provides:
Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from

**B. Connecticut Common–Law Claims**

▉ The state also has immunity under the Eleventh Amendment for state common-law claims. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900, ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"), and *Cates v. Conn. Dep't of Corr.,* No. 3:98CV2232(SRU), 2000 WL 502622, at *12 (D.Conn.Apr.13, 2000). Applying the same reasoning used in analyzing the CFEPA claim, the Health Center, as an agent of the state, is protected by the Eleventh Amendment. Therefore, the court grants summary judgment in favor of the defendants on Count Five for breach of implied contract and on Count Six for intentional infliction of emotional distress.

**C. Title VII**

**1. EEOC Claim**

▉ Defendants maintain that plaintiff's Title VII claims in Count One and Count Seven fail are barred because plaintiff did not receive a right to sue notice from the Attorney General of the United States as expressly required by 42 U.S.C.A. § 2000e–5(f)(1)(A) and because plaintiff did not file suit within ninety days after receiving a Dismissal and Notice of Rights from the EEOC, dated June 23, 1998. (Defs.' Mem. at 8–9).

Plaintiff maintains that her claim is not time-barred because the original complaint was filed on September 30, 1998, and her claims of discrimination are substantially similar to those of the other parties. (Pl.'s Mem. at 37–39).

the commission ... [for] any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford. . . .

Title VII provides in relevant part that if "the Attorney General has not filed a civil action in a case involving a government, government agency, or political subdivision, or the Commission has not entered into a conciliation agreement ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1).

■ Here, the Dismissal and Notice of Rights letter was dated June 23, 1998, and states in relevant part "[y]our lawsuit must be filed *WITHIN 90 DAYS* of your receipt of this notice." (Defs.' Appendix Of Exhibits, E). Plaintiff does not specify in either her deposition testimony or in her affidavit the day on which she received the EEOC Dismissal. A presumption exists that an EEOC notice is received three days after its mailing. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Therefore, plaintiff is presumed to have received the EEOC Dismissal on June 26, 1998. It is undisputed that the original complaint was filed on September 30, 1998, beyond the statutory ninety day limit.

■ However, the ninety day rule may be equitably tolled in certain circumstances. *South v. Saab Cars USA. Inc.*, 28 F.3d 9, 11 (2d Cir.1994). In *Hladki v. Jeffrey's Consol. Ltd.*, 652 F.Supp. 388, 393 (E.D.N.Y.1987), the court enumerated eight circumstances which may result in the equitable modification of Title VII's procedural requirements: (1) when a claimant has received inadequate notice; (2) when a motion for appointment of counsel is pending; (3) when a court has led a plaintiff to believe that he or she has done everything required; (4) when affirmative misconduct by a defendant has lulled a plaintiff into inaction; (5) when a plaintiff has in some extraordinary way been pre-

vented from asserting his rights; (6) when a plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum; (7) when a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending; or (8) when the EEOC or Attorney General has incorrectly refused to issue a right to sue letter.

In the present case, plaintiff has not argued that she is entitled to equitable modification based on any of the above referenced exceptions. Instead, plaintiff relies on the "single filing rule" set forth in *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir.1986), which permits a plaintiff to join the action where another plaintiff has filed a timely EEOC complaint and the claims arise out of similar treatment in the same time frame. (Pl.'s Mem. at 38–39).

On September 28, 2001, this court adopted the recommendation of Magistrate Judge Garfinkel to deny plaintiffs' Motion For Order determining that the action may be maintained as a class action. (See Mem. of Decision. # 55). In that Memorandum, the court stated that "each of the claims of the named plaintiffs is quite distinct," and that "the named plaintiffs worked in different departments, for many different supervisors, held a variety of positions during their tenure with defendant, and were there during different time periods." (*Id.* at 12 & n. 5). Thus, the single filing rule is inapplicable to this plaintiff. Accordingly, the court declines to apply either the doctrine of equitable tolling or the single filing rule to the EEOC claim, which was not filed within the limitations period.

### 2. CHRO Claim

On December 17, 1997, plaintiff filed a claim with the CHRO, alleging retaliation

on or about September 1997. In her complaint, plaintiff states that her supervisor was instructed by Barbara Rudnick to lower plaintiff's evaluation because of absences. Plaintiff explains that her absences were due to attending doctor's appointments related to a worker's compensation matter. (Defs.' Appendix of Exhibits, F).

In order for plaintiff to make out a *prima facie* case of retaliation, she must demonstrate: that she participated in a protected activity; that the adverse employment action disadvantaged her; and that there is a causal connection between the protected activity and the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ At her deposition, plaintiff stated that she learned of Rudnick's alleged interference with her evaluations from Sue Schwartz. (Pl.'s Dep. at 99). However, Ms. Schwartz did not submit an affidavit in support of plaintiff's claims. The court cannot consider hearsay statements in opposition to a motion for summary judgment. *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999). Furthermore, plaintiff testified that throughout the duration of her career, she has received only one evaluation below "good." She stated that she received a "fair" evaluation from Dr. Lepowsky in 1994. (Pl.'s Dep. at 66 & 98 & Defs.' Exh. I). Thus, her claim of retaliation is time barred.

■ In the background section of plaintiff's amended complaint, she enumerates other acts of retaliation including denial of promotional opportunities and unwarranted suspensions. Plaintiff identifies five employment opportunities that she believes she was wrongfully denied— two applications for Dental Administrative Assistant, two applications for Lead Dental Assistant and one application for Floa-

ter Dental Assistant. Of the five positions, three were never filled—both of the Lead Dental Assistant positions and one of the Dental Administrative Assistant positions. (Defendants' Rule 56(a)(1) Statement at ¶ 11). Plaintiff admitted that she never applied for the Dental Administrative Assistant position. (*Id.* at ¶ 12). Plaintiff also admitted that the Floater Dental Assistant position was not a promotion, but a lateral transfer; there was no pay increase. The difference between her then current position and that of a Floater was that the Floater job would allow plaintiff to work in different dental clinics within the Health Center more frequently. (*Id.* at ¶ 13).

The Health Center stated that the Floater position was filled in accordance with the collective bargaining agreement applicable to the New England Health Care Employees Union District 1199 ["Local 1199"]. (*Id.* at ¶ 14). Plaintiff admitted that she is a member of Local 1199 and concedes that lateral transfers are required to be filled on a seniority basis in accordance to the Local 1199 collective bargaining agreement. (*Id.* at ¶ 15). Plaintiff admitted that the person who filled the Floater position had more seniority than plaintiff. (*Id.* at ¶ 16). Thus, plaintiff fails to make out a *prima facie* claim of retaliation because she cannot show that she either suffered a materially adverse employment action or that she was denied a promotion on the basis of discrimination.

■ Next, plaintiff made a complaint in 1993 to the Health Center's Affirmative Action Office that she was not trained in the Health Center's new computer system. (Defendants' Rule 56(a)(1) Statement at ¶ 17). This claim is time barred because it occurred more than 300 days prior to the date on which plaintiff filed her CHRO charge. *See* 42 U.S.C. § 2000e.

As to unwarranted disciplinary actions, plaintiff has not been suspended or received any disciplinary action at any time from January 1, 1997 to present. (Defendants' Rule 56(a)(1) Statement at ¶ 18).

■ As to light duty work, plaintiff requested light duty work during her pregnancies in 2000 and 2001. (Defendants' Rule 56(a)(1) Statement at ¶ 19). Plaintiff claims that her supervisor, Delorse Lambert, an African–American female, refused these requests in retaliation for complaints made in the past. (*Id.*). Plaintiff claims that Lambert denied a similar request in February 2003. (*Id.*). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,' " *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). In this case, the denial of plaintiff's requests have occurred more that three, four and almost six years, respectively, after the CHRO claim was filed in December 1997. Thus, plaintiff has not met her burden of demonstrating a causal connection between filing the CHRO claim and the alleged denials of light duty work. Therefore, the court grants defendants' motion for summary judgment as to plaintiff's Title VII claims in Counts One and Seven.

### D.  Claims against Dr. Cutler

Count Three and Count Four assert claims against Dr. Cutler in his individual capacity as the former Chancellor of the Health Center. Defendants move for summary judgment on these claims because they contend that Dr. Cutler was not personally involved in any alleged act of discrimination and that because plaintiff was not denied any procedural or substantive due process clause rights as alleged. (Defs.' Reply Mem. at 23). Defendants also claim that Dr. Cutler acted in an objectively reasonable manner with respect to plaintiff's employment at the Health Center and that therefore he is entitled to qualified immunity. (*Id.*).

#### 1.  Section 1983 Claim

■ Courts in this Circuit hold that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). In her deposition testimony and in her affidavit, plaintiff does not state either that Dr. Cutler was one of her supervisors or that Dr. Cutler personally harassed plaintiff on the basis of her race or national origin. (Pl.'s Dep. and Aff.). The fact that Dr. Cutler was in a high position of authority is an insufficient basis for the imposition of personal liability. *McKinnon*, 568 F.2d at 934.

#### 2.  Section 1981 Claim

■ In plaintiff's opposition memorandum, she claims that Dr. Cutler had one meeting with the People With Voices Committee, and that Dr. Cutler attended a 1998 meeting before the CHRO, at which he said "that we're not capable of doing our jobs good." These incidents evidence Dr. Cutler's personal involvement and are thus bases for imposing liability. (Pl.'s Mem. at 41–42). Based on the court's reading of the amended complaint, it is unclear whether plaintiff is asserting either a procedural or substantive due process claim.

Due process claims may take either of two forms: procedural due process or substantive due process. Procedural due process claims concern the adequacy of the procedure provided by the gov-

ernmental body for the protection of liberty or property rights of an individual. Substantive due process claims, on the other hand, concern limits on governmental conduct toward an individual regardless of procedural protections. *DeLeon v. Little*, 981 F.Supp. 728, 734 (D.Conn.1997).

■ As to procedural due process, "[a] plaintiff claiming due process protection under the Fourteenth Amendment must possess a 'property' or 'liberty' interest that is somehow jeopardized by governmental action, necessitating a pre- or postdeprivation hearing as a safeguard." *Dobosz v. Walsh*, 892 F.2d 1135, 1140 (2d Cir.1989). Government acts defaming a person may implicate a liberty interest and may be actionable upon evidence of serious harm, such as a loss of employment. *Id.*

Plaintiff does not assert in either her deposition or in her affidavit, that she was denied a promotion or pay raise as a result of any comments or actions by Dr. Cutler. Plaintiff has not presented sufficient evidence to create a genuine issue of material fact that the alleged actions taken by Dr. Cutler deprived her of a constitutionally protected property interest. Thus, the court grants the defendants' motion for summary judgment as to plaintiff's procedural due process claim.

■ As to substantive due process, "[t]he Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first test, the plaintiff must prove that the governmental body's conduct 'shocks the conscience.'" *DeLeon*, 981 F.Supp. at 734. "[W]ith regard to [the] 'shocks the conscience' test that [t]he acts must do more than offend some fastidious squeamishness or private sentimentalism . . .; they must be such as to offend even hardened sensibilities, or constitute force that is brutal and offensive to human dignity." (Internal quotation marks omitted.) *Id.*, at 734–35.

"[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Russo v. Hartford*, 184 F.Supp.2d 169, 196 (D.Conn. 2002).

Here, plaintiff has not presented any evidence to show that defendants engaged in any conduct, that, as a matter of law, "shocks the conscience." *See Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir.1999)(plaintiff "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised").

"Under the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause." *DeLeon*, 981 F.Supp. at 734. The court has already determined that the plaintiff has failed to create a genuine issue of material fact as to the existence of a constitutionally protected property or liberty interest and that she was the subject of conduct that "shocks the conscience." Thus, the court concludes that plaintiff's claims against Dr. Cutler fail as a matter of law. Therefore, the court need not reach defendants' argument that Dr. Cutler enjoys qualified immunity from suit. Accordingly, the court grants the defendants' motion for summary judgment as to Count Three and Count Four.

### IV. Conclusion

For the reasons stated above, the court *grants* defendants' Motion for Summary Judgment (Doc. # 97) on all counts of plaintiff Ozenne's first amended complaint.

SO ORDERED.